ALPHA SCHOOL BUS COMPANY, INC., *et al.*, Plaintiffs-Appellants, v. MICHAEL W. WAGNER *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—06—3427

Opinion filed May 15, 2009.

Michael R. Collins, of Collins & Collins, of Chicago, for appellants.

Bruce Rose, of Law Office of Bruce Rose, of Westchester, for appellees.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

On May 9, 2006, plaintiffs Alpha School Bus Company, Inc. (Alpha), and Cook-Illinois Corp. (Cook-Illinois), filed a third amended

complaint against Michael W. Wagner, Barbara Ann Hackel, Southwest Transit, Inc. (Southwest), Southwest Transit Leasing, LLC (Southwest Leasing), Leroy Meister, Chicago Bear Bones Leasing, Inc. (Chicago Bear Bones), Sunrise Southwest, LLC (Sunrise Southwest), and Sunrise Transportation, Inc. (Sunrise Transportation),[1] alleging, *inter alia*, violations of the Illinois Antitrust Act (the Antitrust Act) (740 ILCS 10/1 *et seq.* (West 2006)) and the Illinois Trade Secrets Act (the Trade Secrets Act) (765 ILCS 1065/1 *et seq.* (West 2006)). Defendants filed a combined motion to dismiss under sections 2—615 and 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615, 2—619 (West 2006)). The trial court granted the section 2—615 motion and dismissed the cause with prejudice. On appeal, plaintiffs contend the trial court erred in (i) holding that the Antitrust Act and the Trade Secrets Act preempt plaintiffs' other claims; (ii) dismissing plaintiffs' claims for a permanent injunction and for trade secret misappropriation[2]; (iii) dismissing Cook-Illinois as a party; (iv) dismissing plaintiffs' claims regarding two allegedly lost contracts that plaintiffs' "sister corporations" bid on; and (v) dismissing their third amended complaint with prejudice. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

### A. General Facts

Alpha, a wholly owned subsidiary of Cook-Illinois, has provided special education school bus transportation services for the Chicago Board of Education of Chicago Public Schools (CPS), Community High School District 218 (District 218), and the Southwest Cook County Cooperative Association for Special Education (SWCCCASE). Wagner was an officer of Alpha from 1986 through April 13, 2003. Meister was a "managing employee" of Alpha from June 1989 through May 23, 2003. Hackel was the owner of Southwest, and Wagner owned Southwest Leasing. According to defendants, Southwest leased its rolling stock from Southwest Leasing.

---

[1]Meister, whose name in the record is also spelled "Miester," Chicago Bear Bones Leasing, Inc., Sunrise Southwest, LLC, and Sunrise Transportation, Inc., are not parties to this appeal. For the sake of clarity, we shall refer to Wagner, Hackel, Southwest, and Southwest Leasing as the "Southwest defendants," and Sunrise Transport and Sunrise Southwest as the "Sunrise defendants."

[2]Plaintiffs also ask that we review whether they stated a cause of action against Wagner for "violation of a stipulation." The record reveals, however, that plaintiffs never alleged such a count. We therefore will disregard plaintiffs' contentions on this "issue."

## B. Prior Procedural History

Plaintiffs originally filed this cause of action against defendants in the federal district court in the summer of 2003, alleging violations of state and federal antitrust laws, civil conspiracy, violation of Illinois trade secret laws, tortious interference with business opportunity, breach of fiduciary duty, racketeering, and fraudulent transfer of assets. See *Alpha School Bus Co. v. Wagner*, No. 03 C 5009, slip op. at 2 (N.D. Ill. June 17, 2004). The federal district court subsequently granted defendants' motions to dismiss, holding that plaintiffs failed to state a claim either of "bid-rigging" under the Sherman Act (15 U.S.C. §1 *et seq.* (2000)) or of mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§1961 through 1968 (2000)). *Alpha School Bus Co. v. Wagner*, No. 03 C 5009, slip op. at 8 (N.D. Ill. June 17, 2004). The district court then dismissed the remaining state law claims for lack of jurisdiction. *Alpha School Bus Co. v. Wagner*, No. 03 C 5009, slip op. at 8 (N.D. Ill. June 17, 2004).

On June 21, 2004, plaintiffs filed an eight-count complaint against the Southwest defendants, Meister, Chicago Bear Bones, and the Sunrise defendants. Plaintiffs' complaint included counts for antitrust violations, civil conspiracy, misappropriation of trade secrets, tortious interference with prospective business opportunity, breach of fiduciary duty, permanent injunctive relief, fraudulent transfers, and successor liability. The Southwest and Sunrise defendants moved to dismiss the complaint pursuant to sections 2—619 and 2—615 of the Code. The trial court denied the section 2—619 motion to dismiss, granted the section 2—615 motion without prejudice regarding all but the breach of fiduciary duty claim, and allowed plaintiffs leave to replead.

Plaintiffs then filed their first amended complaint, which incorporated the original complaint for purposes of appeal. The first amended complaint included the same counts as the original complaint and added a count for tortious interference with contract or, in the alternative, intentional interference with prospective economic advantage. Attached to the complaint was a signed stipulation and order for the federal cause of action.

The Southwest defendants filed a motion to dismiss pursuant to section 2—619, which the trial court granted in part, dismissing Cook-Illinois as a party and striking allegations regarding the CPS and District 218 contracts. The trial court also granted Alpha 28 days to amend its complaint.

## C. The Second Amended Complaint

Alpha filed its second amended complaint on November 23, 2005, including previously dismissed allegations regarding Cook-Illinois and

Sunrise Transportation solely for appeal purposes. Count I of the second amended complaint also alleged antitrust violations, but was substantially similar to the antitrust count in the first amended complaint. Specifically, plaintiffs alleged that the Southwest defendants, Meister, and Chicago Bear Bones either in conspiracy or by contract acted to restrain trade regarding the SWCCCASE contract. Plaintiffs claimed that Wagner and Meister prepared the SWCCCASE contract bids for both Alpha, their employer, and Southwest, Alpha's competitor. Plaintiffs claimed that Wagner and Meister intended to make Alpha's bid higher than Southwest's so that Southwest would win the SWCCCASE contract and then overbill SWCCCASE. Plaintiffs also claimed that, in addition to "rigging the SWCCCASE bid," the Southwest defendants, Meister, and Chicago Bear Bones conspired to reduce competition by putting Alpha out of business. Plaintiffs supported this additional claim by: (1) referring the trial court to its allegations regarding the civil conspiracy count (count II) and the misappropriation of trade secrets count (count III); and (2) alleging that defendants sabotaged Alpha's reputation and operations, "convert[ed] its trade secrets," fraudulently induced its "employees, drivers and mechanics to terminate their employment" with Alpha, and converted Alpha's assets. Finally, plaintiffs claimed that, prior to a federal injunction hearing in September 2004, the Southwest defendants transferred Southwest and Southwest Leasing's business and assets to Sunrise Southwest in order to prevent the plaintiffs from recovering their "customers, business, employees and property and to profit and benefit" the Southwest defendants. Plaintiffs then asserted that, "as a result of the forgoing bid-rigging and over-billing scheme[,] prices were artificially increased and competition was reduced and restrained."

Count II of the second amended complaint alleged that the Southwest defendants, Meister, and Chicago Bear Bones conspired to "acquire Alpha's customers, business, employees and property by unlawful means." Plaintiffs alleged that, in furtherance of the conspiracy, the Southwest defendants, Meister, and Chicago Bear Bones knowingly agreed to "rig the bids" on the SWCCCASE contract in violation of the Antitrust Act and section 33E—3 of the Criminal Code of 1961 (720 ILCS 5/33E—3 (West 2006)). Plaintiffs alleged the bid-rigging scheme involved Wagner and Meister providing Alpha's pricing to Southwest and Hackel prior to the bid and then preparing Alpha's and Southwest's bids without Alpha's knowledge, despite the fact that Alpha and Southwest were competitors. Plantiffs also claimed that Wagner and Meister furthered the conspiracy by breaching their fiduciary duties to Alpha. Wagner's breach consisted of his alleged

formation of Southwest, Southwest Leasing, and Chicago Bear Bones, as well as his solicitation of Alpha's key employees and competition against Alpha, all while he was an officer of Alpha. Meister's breach consisted not only of his alleged solicitation of Alpha's employees while a managing employee of Alpha, but also his active engagement in competition with Alpha, his supplying of Alpha's bid information to Southwest and Hackel, and his active concealment of the defendants' conduct. Wagner and Meister were alleged to have conspired with other unnamed Alpha employees to have those unnamed employees remain at Alpha in order to sabotage its operations and reputation. Plaintiffs further alleged that Wagner furthered the conspiracy by (1) falsifying Meister's vacation time and bonus records, as well as the employment records of employees Wagner wanted to recruit to work for Southwest; (2) falsely telling Alpha that he was only a consultant for Southwest; and (3) making various disparaging remarks about Alpha. Plaintiffs claimed that Meister furthered the conspiracy by (1) falsely claiming he had no relationship with Southwest when in fact he was the director of its operations while still employed by Alpha, (2) asking the executive director of SWCCCASE to conceal his involvement with Southwest from Alpha, and (3) taking Alpha's "confidential" drivers list and using it to solicit them to work for Southwest. Finally, plaintiffs also asserted that Wagner and Meister furthered the conspiracy through their conversion of various property of Alpha, including its "bid on the SWCCCASE contract," "bidding information," "detailed" bus information, "drivers' lists," "bus routing information," "route sheets containing proprietary information" of Alpha's bus routes, "detailed route combination information," financial statements, files and business records, and "proprietary billing software."

Count III alleged misappropriation of trade secrets via a conspiracy by the Southwest defendants, Meister, and Chicago Bear Bones "for the express purpose of obtaining a competitive advantage over Alpha and in an effort to put Alpha out of the special education student transportation business." Plaintiffs claimed that Alpha had protectable trade secrets in its "bid prices and bidding information," "specialized vehicle information," drivers' lists, bus routes and "route sheets," "multidistrict route configurations," financial statements, files and business records, and computer programs. Plaintiffs then alleged that defendants used the trade secrets to gain a competitive advantage over Alpha.

In count IV, Alpha alleged that Wagner breached his fiduciary duty to Alpha. Alpha realleged its antitrust claim within this count that Wagner conspired with the other Southwest defendants, Meister, and

Chicago Bear Bones to fix the price of school bus transportation services for SWCCCASE in violation of the Antitrust Act. Alpha also realleged within this count the portion of its civil conspiracy claim regarding Wagner's antitrust violations and Wagner's and Meister's conversion of certain of Alpha's property that Alpha previously claimed were protectable trade secrets. Alpha then alleged that the following conduct on the part of Wagner constituted a breach of his fiduciary duty to Alpha: (1) establishing a competing business; (2) preparing bids for Southwest, "a rival concern"; (3) usurping Alpha's business opportunities; (4) converting Alpha's property; (5) misappropriating Alpha's trade secrets; (6) soliciting Alpha's employees; (7) misappropriating Alpha's funds through false or incomplete expense account reports; and (8) conspiring with Alpha's employees to sabotage Alpha.

Count V alleged breach of fiduciary duty against Meister, which mirrored the allegations of breach of fiduciary duty against Wagner, but excluded an allegation that Meister established a competing business and included allegations that Meister solicited Alpha's customers and "compet[ed] directly with Alpha" as Southwest's director of operations.

Count VI alleged an inducement of breach of fiduciary duty against Hackel and Southwest. Specifically, Alpha claimed that Hackel and Southwest were aware of Wagner's fiduciary duty to Alpha, but "colluded with Wagner in committing a breach of his fiduciary duty to Alpha and participated with Wagner" in that breach by (1) having Hackel act as nominee in connection with the ownership and management of Southwest, whereas Wagner in fact controlled Southwest; (2) conspiring with Wagner to "rig the SWCCCASE bid"; (3) conspiring with Wagner to "usurp Alpha's trade secrets"; (4) soliciting Alpha's employees and customers; and (5) assisting Wagner in competing with Alpha while Wagner was employed by Alpha.

Finally,[3] in count VII, Alpha sought permanent injunctive relief, claiming that it had a clear and ascertainable right to the protection of its "confidential business information," as well as Wagner's and Meister's loyalty to it as "its employees." Alpha further alleged that it had a clear and ascertainable right to Wagner's compliance with an agreed stipulation and order whereby Wagner agreed not to make derogatory statements about Alpha but that, on information and belief, Wagner

---

[3]Counts VIII, IX, X, and XI alleged various claims against Sunrise Southwest, which is not a party to this appeal. Accordingly, any claims regarding those dismissed counts are forfeited. See 210 Ill. 2d R. 341(h)(7) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

sent anonymous letters to its actual and prospective customers that made derogatory remarks about Alpha. Alpha thus sought a permanent injunction against Wagner, Meister, and Southwest preventing Wagner and Meister from competing with Alpha, soliciting Alpha's employees, using Alpha's trade secrets, or making derogatory comments about Alpha.

The Southwest defendants, Meister, and Sunrise Southwest each filed a motion to dismiss, and on April 10, 2006, the trial court issued a written order, noting that oral argument had been heard on the motions. The trial court granted Meister's and the Southwest defendants' motions to dismiss with prejudice to all counts except count III, the misappropriation of trade secrets claim. The trial court found that the dismissed counts were "all based, in whole or in part, on the alleged misappropriation and use of purported trade secrets" and were therefore preempted by section 8 of the Trade Secrets Act. The trial court added that section 9 of the Antitrust Act preempted counts II, IV, V, VI, and VII, because each of those counts rested "at least in part," on an alleged conspiracy to violate the Antitrust Act. The trial court dismissed all counts except count III with prejudice, noting that Alpha had prior opportunities to amend its pleading, but had failed to do so. The trial court also stated that an additional reason supporting the dismissal of count VII, the permanent injunction count, was that Alpha had not, during the prior two years the litigation had taken place, sought a preliminary injunction to preserve the status quo of the parties, and because the conditions surrounding the parties had changed, issuing a permanent injunction would be ineffective and inappropriate based on the allegations in the second amended complaint. With respect to count III, Alpha's misappropriation of trade secrets claim, the trial court found that the count lacked sufficient specificity to state a cause of action under the Trade Secrets Act because Alpha failed to sufficiently incorporate by reference conduct that was alleged elsewhere in the second amended complaint. The trial court stated, however, that it appeared that Alpha could plead a valid cause of action under the Trade Secrets Act, so it dismissed count III without prejudice.

### D. The Third Amended Complaint

On May 9, 2006, Alpha filed its third amended complaint, in which Alpha repled its prior counts from the second amended complaint that had been dismissed with prejudice in order to preserve its "appellate rights." Regarding count III, the misappropriation of trade secrets claim that was dismissed without prejudice, Alpha realleged that its sealed bid for the SWCCCASE contract, its bids for the spring 2003

District 218 and CPS transportation contracts, as well as certain information regarding its "business operations" were trade secrets.

Regarding its sealed bid for the SWCCCASE contract, Alpha claimed the bid was not known to the public and that Alpha sealed its bid both in compliance with section 10—20.21 of the School Code[4] (105 ILCS 5/10—20.21 (West 2004)) and also in order to prevent its disclosure to the public and Alpha's competitors prior to the bid opening. Alpha claimed that it derives "substantial economic value" in keeping its bids secret prior to the bid opening because it prevents competitors from "having an illegal and competitive advantage." In addition, Alpha asserted that competitors obtain economic value from "knowing Alpha's bid to eliminate it as a competitor." Alpha further alleged that it made reasonable efforts to maintain the secrecy of its SWCCCASE bid by: (1) putting in place a corporate policy to restrict the bid pricing information to senior management, including Wagner and Meister, and "several other people" in Cook-Illinois's top management; (2) requiring its bid to be placed in a sealed envelope and delivered to the school district via a "restricted chain of custody"; and (3) regularly "stressing the secrecy of the bidding operations to its management and employees."

Alpha also alleged that it provided a bid for the special education transportation portion of the spring 2003 District 218 and the CPS transportation contracts to its "sister corporations," Frontier Coach, Inc. (Frontier Coach), and Illinois School Bus Company, Inc. (Illinois School Bus). Frontier Coach and Illinois School Bus later incorporated Alpha's special education bid price into their respective bids for the spring 2003 transportation contracts with District 218 and the CPS. Alpha stated that, if either Frontier Coach or Illinois School Bus won either contract, Alpha would have provided the special education transportation under the contract. Alpha asserted that its special education transportation bid pricing for the two contracts was a trade secret without further elaboration. Alpha further stated that it undertook reasonable efforts to protect the confidentiality of its bid pricing in substantially the same manner as its SWCCCASE bid (*i.e.*, putting in place a corporate policy restricting the bid information to senior management and several unnamed "other people" in Cook-Illinois's top management), with the exception that it required Frontier Coach and Illinois School Bus to place the bids in a sealed

---

[4]Alpha refers to this statute as the "Illinois School Code," but we presume it was referring to the School Code because the statutory short title of the only Illinois act containing a section 10—20.21 is the "School Code." See 105 ILCS 5/1—1 (West 2004).

envelope and deliver them to the school districts via a "restricted chain of custody."

Finally, Alpha alleged that the following information related to its "business operations" were trade secrets: (1) school district contract and bid date information; (2) the "information" on Wagner's computer; (3) the list of the names, addresses, and phone numbers of its drivers; (4) its "customer list, including the number and type of vehicles used for each customer" and "customer information including student attendance and days of attendance"; (5) "bus and bus routing information," "route revenue, average daily revenue and the number of vehicles needed to operate the routes for each customer," "detailed route combination information," "route sheets containing proprietary information of the bus routes developed by Alpha," and "routing information and files"; and (6) its financial statements. Alpha claimed that it maintained the secrecy of this information by restricting access to Cook-Illinois's executives, Wagner, and Meister, with the exceptions that Wagner and Meister did not have access to Alpha's financial statements or drivers' list, but allowing "certain dispatchers" access to Alpha's drivers' list. Alpha further alleged that it required that all of the purported trade secrets were kept in its administrative offices, which were locked and separate from the drivers' facilities. Alpha also stated that it "continually" instructed its employees that the information was confidential and that it "repeatedly" demanded Wagner and Meister return the information upon termination of their employment. Alpha claimed that it compiled the information "over many years at great cost" and was unavailable from any public source. Alpha asserted that it derived substantial economic value from keeping the information secret because otherwise its competitors would be "enticed into its markets" without needing to spend the same amount of time or money in compiling the information.

Alpha then claimed that defendants used its purported trade secrets to gain an unfair competitive advantage over Alpha in the following manner: (1) defendants "used" Alpha's bid prices to obtain the SWCCCASE, District 218, and CPS contracts that otherwise would have been awarded to Alpha; (2) defendants "used Alpha's driver information to take and keep drivers from Alpha"; and (3) defendants used Alpha's other business information to duplicate Alpha's business operations, set up a specialized fleet of vehicles similar to Alpha's fleet, and to make similar bidding and pricing decisions. In addition, for the first time in its third amended complaint, Alpha alleged that defendants used Alpha's financial statements to "compile a confidential investor memorandum and a bank financing application" for

Southwest and Southwest Leasing. Alpha, however, did not attach a copy of either document to the complaint. Alpha further alleged willful and malicious conduct on the part of defendants.

Meister and the Southwest defendants filed motions to dismiss under sections 2—615 and 2—619 of the Code. On November 3, 2006, the trial court issued a written order granting defendants' motion to dismiss. The trial court's order noted that it had "heard oral argument" and that it was dismissing with prejudice the remaining count of the complaint—the claim under the Trade Secrets Act—because the allegations were conclusory, they related to multiple causes of action in violation of section 2—603 of the Code, and plaintiffs had three prior attempts to plead "a valid cause of action." This timely appeal follows.

## II. ANALYSIS

At the outset, we note that, despite the trial court having heard "oral argument" on defendants' motions to dismiss, plaintiffs have failed to provide a report of proceedings, such as a verbatim transcript, as required by Supreme Court Rule 321. See 155 Ill. 2d R. 321. Nor have plaintiffs provided an alternative, such as a bystander's report or an agreed statement of facts, as provided for by Rule 323. See 210 Ill. 2d R. 323.

Supreme court rules are not mere suggestions. See *Applebaum v. Rush University Medical Center*, 231 Ill. 2d 429, 447 (2008). The appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record, the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003), citing *Webster v. Hartman*, 195 Ill. 2d 426, 433 (2001), and *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). We must also point out to plaintiffs that we are bound by the rule that any doubts which may arise from the incompleteness of the record must be resolved against the party who brings the appeal (in this case, plaintiffs). *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157 (2005); see also *Foutch*, 99 Ill. 2d at 392. Nonetheless, in those instances where, as here, the trial court has not heard evidence and its decision is based solely upon the pleadings and affidavits, the appellate court may review the issues of law without a report of proceedings. *Korogluyan v. Chicago Title & Trust Co.*, 213 Ill. App. 3d 622, 627 (1991). Moreover, we may affirm the judgment of the trial court on any basis in the record, regardless of whether the trial court relied upon that basis or whether the trial court's reasoning was correct. *Rodriguez v.*

*Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 357 (2006). As such, and with these limitations in mind, we now turn to the merits of plaintiffs' appeal.

A. The Granting of Defendants' Section 2—615 Motion to Dismiss

Plaintiffs first contend that the trial court erred in granting defendants' motion to dismiss under section 2—615 of the Code. Plaintiffs argue that the Antitrust Act and the Trade Secrets Act do not preempt the breach of fiduciary claim against Wagner or claims for civil conspiracy and inducement of breach of fiduciary duty.[5] Plaintiffs then argue that the Antitrust Act does not preempt their claims for trade secret misappropriation and that the Trade Secrets Act does not preempt the antitrust claim. Plaintiffs then challenge the trial court's dismissal of the claims for a permanent injunction and trade secret misappropriation.

A motion to dismiss brought pursuant to section 2—615 of the Code challenges the legal sufficiency of a complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004). In reviewing the sufficiency of a complaint, a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts while viewing all allegations in the light most favorable to the plaintiff. *Young*, 213 Ill. 2d at 441. As a result, a motion to dismiss pursuant to section 2—615 should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Nonetheless, Illinois is a fact-pleading state, and conclusions of law and conclusory factual allegations unsupported by specific facts are not deemed admitted. *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 767 (2007). In addition, a pleading that merely paraphrases the elements of a cause of action in conclusory terms is insufficient. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999), citing *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 423-27 (1981). Furthermore, absent the necessary allegations, even the general policy favoring the liberal construction of pleadings will not satisfy the requirement that a complaint set forth facts necessary for recovery under the theory asserted. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368 (2004). We review *de novo* the trial court's dismissal of a complaint pursuant to section 2—615 of the Code. *Young*, 213 Ill. 2d at 440.

---

[5]Alpha also contends the Trade Secrets Act does not preempt its claim for intentional interference with prospective advantage. We will disregard this issue, however, because this claim was lodged against Sunrise Southwest, and Alpha admits in its brief to this court that "plaintiffs have dismissed [Sunrise Southwest] from the appeal."

### 1. Preemption by the Antitrust Act and the Trade Secrets Act

Plaintiffs contend that the Antitrust Act and the Trade Secrets Act do not preempt the breach of fiduciary claim against Wagner or claims for civil conspiracy and inducement of breach of fiduciary duty. Plaintiffs also argue that the Trade Secrets Act does not preempt the antitrust claim and that the Antitrust Act does not preempt their claims for trade secret misappropriation.

■ The Trade Secrets Act permits a plaintiff to recover damages for the misappropriation of a "trade secret." 765 ILCS 1065/4 (West 2006). A "trade secret" is defined as:

"information, including but not limited to *** data, a formula, pattern, compilation, program, device, method, technique, *** process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d) (West 2006).

In addition, section 8 of the Trade Secrets Act provides in pertinent part as follows:

"(a) Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.

(b) This Act does not affect:
***

(2) other civil remedies that are not based upon misappropriation of a trade secret[.]" 765 ILCS 1065/8 (West 2006).

Plaintiffs first challenge the trial court's finding that the Trade Secrets Act preempted their claim that Wagner breached his fiduciary duty. Specifically, plaintiffs alleged that Wagner, while an officer of plaintiffs, set up a competing school bus transportation business and prepared bids for both companies.

■ As a general rule, employees may plan, form, and outfit a competing corporation while still working for the employer, but they may not commence competition. *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 796 (2002). In addition, absent fraud, a contractual restrictive covenant, or the improper taking of a customer list, former employees may compete with their former employers and solicit former customers provided there was no demonstrable business activity before termination of their employment. *Delta Medical Systems*, 331 Ill. App. 3d at 796. This

general rule, however, does not apply to corporate officers, who owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160 (1993). This duty of loyalty is not inconsistent with the officer's right to enter into competition with a former employer upon leaving such employment, but the officer's resignation does not sever liability for transactions that began (or were based upon information acquired) while the officer was employed and completed after the officer resigned. *Veco Corp.*, 243 Ill. App. 3d at 161. Although plaintiffs' claim includes allegations that Wagner used trade secrets in preparing the bid, this claim is not dependent upon the misappropriation of trade secrets. Plaintiffs also claim, *inter alia*, that Wagner established a competing business while still employed by Alpha, solicited Alpha's employees to work for the competing business, and converted various property of Alpha. Therefore, the Trade Secrets Act does not preempt this claim, and the trial court erred in dismissing plaintiffs' breach of fiduciary duty claim against Wagner.

■ Regarding plaintiffs' civil conspiracy claim, plaintiffs alleged a conspiracy among Wagner, Meister, Hackel, Chicago Bear Bones, Southwest, and Southwest Leasing. We note, however, that plaintiffs' only allegation with respect to Southwest Leasing was that it conspired with the other defendants to "acquire Alpha's customers, business, employees and property by unlawful means" and "rig the bids" on the SWCCCASE contract. Plaintiffs do not allege facts explaining the role of Southwest Leasing in these acts, nor do we find any subsequent allegations regarding Southwest Leasing. As a result, we cannot find these allegations to be either specific or factual in nature, and any conspiracy claim regarding Southwest Leasing was properly dismissed by the trial court. As noted above, Chicago Bear Bones is not a party to this appeal, so plaintiff has forfeited any challenge to the trial court's dismissal of any claim, including civil conspiracy, with respect to Chicago Bear Bones.

Regarding the allegations among the remaining "conspirators," *i.e.*, Wagner, Hackel, Meister, and Southwest, we note that plaintiffs admitted in their pleadings that Wagner, Hackel, and Meister were officers or employees of Southwest. Corporations can only act through their agents. *Small v. Sussman*, 306 Ill. App. 3d 639, 645-646 (1999). It is well established that employees and officers of a corporation are the corporation's agents. See Restatement (Third) of Agency §1.01, Comment *c*, at 19 (2006) ("The elements of common-law agency are present in the relationships between employer and employee, corpora-

tion and officer"). Furthermore, the general rule is that there can be no conspiracy between a principal and an agent because the acts of an agent are considered in law to be the acts of the principal. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 24 (1998). An exception to this rule is where the interests of a separately incorporated agent diverge from the interests of the corporate principal and the agent at the time of the conspiracy is acting beyond the scope of his authority or for his own benefit, rather than that of the principal. *Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 49 (1998), citing *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1317 (8th Cir. 1986). Another exception is where the agent is acting not as an agent but as a principal; in such a case, the agent can be liable for conspiring with the principal. *Bilut*, 296 Ill. App. 3d at 49, citing *Morrison v. Murray Biscuit Co.*, 797 F.2d 1430 (7th Cir. 1986). The agents in this case, however, are not separately incorporated, and plaintiffs have not alleged that the agents were acting as principals. Since neither exception applies, plaintiffs' claim for civil conspiracy must fail, and the trial court properly dismissed this count. Although the trial court dismissed the count based upon preemption by the Trade Secrets Act, we review the judgment of the trial court, not its reasoning. See *City of Chicago v. Holland*, 206 Ill. 2d 480, 491-92 (2003).

■ Plaintiffs further claim that the Trade Secrets Act does not preempt their claim for Hackel and Southwest's inducement of Wagner's breach of his fiduciary duty to Alpha. Illinois recognizes a cause of action for a third party's inducement of a breach of fiduciary duty, in which a third party who colludes, induces, or participates with a fiduciary in committing a breach of duty, and obtains the benefits from that breach, is directly liable to the aggrieved party. *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill. App. 3d 65, 74 (2005). These claims commonly arise in the context of inducing an agent or employee to breach the fiduciary duty owed to his principal or employer. *Schwendener*, 358 Ill. App. 3d at 74. A predicate to any liability based on a theory of an inducement of a breach of a fiduciary duty, however, is the existence of a fiduciary duty in the first instance. *Schwendener*, 358 Ill. App. 3d at 74. As plaintiff already admitted, Wagner was an agent of Southwest. Because Southwest, a corporation, can only act through its agents, such as Wagner, plaintiffs cannot properly allege that Southwest, *i.e.*, Wagner, induced himself into breaching his fiduciary duty to Alpha. This claim against Southwest therefore fails as a matter of law, and we need not address whether it is preempted by the Trade Secrets Act. This, however, does not settle the matter with respect to this claim.

■ Plaintiffs also claim Hackel induced Wagner into breaching his fiduciary duty to Alpha. Specifically, plaintiffs alleged that Hackel, although aware of Wagner's fiduciary duty to Alpha, colluded and participated with Wagner in the breach of his fiduciary duties by: (1) acting as a nominee of Southwest with Wagner controlling and dominating its affairs; (2) conspiring with Wagner to rig the SWCCCASE bid; (3) conspiring with Wagner to usurp Alpha's trade secrets; (4) soliciting Alpha's employees and customers; and (5) otherwise assisting Wagner in competing with Alpha while he was still an employee. Clearly, plaintiffs' third allegation—that Hackel induced Wagner into breaching his fiduciary duty by conspiring with him to misappropriate Alpha's trade secrets—is based upon the misappropriation of Alpha's trade secrets and thus preempted by the Trade Secrets Act. The other allegations, however, do not appear to be "based upon" the misappropriation of trade secrets, and preemption would not occur. This claim, therefore, is not preempted by the Trade Secrets Act, and the trial court erred in dismissing this count with respect to Hackel.

■ Plaintiffs' antitrust claim centers on "bid-rigging" which requires, *inter alia*, an agreement between a person and its would-be competitor(s) to ensure the awarding of a contract to that person or another. 720 ILCS 5/33E—3 (West 2006). Southwest, the "person" awarded the contracts at issue, was not a competitor of Wagner, since Wagner individually could not obtain bid or obtain the transportation contracts; rather, Southwest was Alpha's competitor. Alpha, however, alleged that Wagner *secretly* (*i.e.*, without Alpha's knowledge) prepared Southwest's winning bid. As such, there could not have been any agreement, and plaintiffs' claim is insufficient as a matter of law.

Alpha further claimed that defendants violated subsections 3(1)(a) and (2) of the Antitrust Act, which essentially require a person to have fixed prices or unreasonably restrained competition either by contract, combination, or conspiracy. See 740 ILCS 10/3(1)(a), (2) (West 2006). Alpha's prior allegation that Wagner was an officer of Alpha, however, would make Wagner the agent and Alpha his principal. See Restatement (Third) of Agency §1.01, Comment *c* (2006). As noted above, corporations can only act through their agents. *Small*, 306 Ill. App. 3d at 645-46. Therefore, taking Alpha's allegations as true, which we must, Alpha is alleging that *Alpha* contracted, combined, or conspired with defendants to either fix prices or restrain trade and put itself out of business. Because the Antitrust Act does not provide relief for self-inflicted wounds, the trial court properly dismissed plaintiffs' antitrust claim. Because of our holding that the antitrust claim fails as a matter of law, we need not determine whether the

Antitrust Act preempts plaintiffs' claims, because (1) the trial court found preemption by the Antitrust Act "[a]s an additional ground" to preemption by the Trade Secrets Act and (2) plaintiffs' claim for trade secret misappropriation fails as a matter of law, regardless of possible preemption by the Antitrust Act.

## 2. The Permanent Injunction and Trade Secret Misappropriation Claims

### a. The Misappropriation of Trade Secrets Claim

■ In order to state a cause of action for misappropriation of trade secrets, a plaintiff must allege facts that the information at issue was: (1) a trade secret; (2) that was misappropriated; and (3) used in the defendant's business. *Strata Marketing, Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1068 (2000), citing *Magellan International Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999). A trade secret is defined in pertinent part as:

> "information, including but not limited to *** data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d) (West 2006).

■ A court should consider the following factors in determining whether a trade secret exists: (1) the extent to which the information is known outside of the plaintiff's business; (2) the extent to which it is known by the employees and others involved in the plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff and to the plaintiff's competitors; (5) the amount of effort or money expended by the plaintiff in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *ILG Industries, Inc. v. Scott*, 49 Ill. 2d 88, 93 (1971). Of these factors, the most important is whether and how an employer acts to keep the information secret. *Jackson v. Hammer*, 274 Ill. App. 3d 59, 68 (1995). The protection of trade secrets must be balanced against conflicting social and economic interests. *Delta Medical Systems*, 331 Ill. App. 3d at 791. If an employer has invested substantial time, money, and effort to obtain a secret advantage, the secret should be protected from an employee who

obtains it through improper means. *Delta Medical Systems*, 331 Ill. App. 3d at 791, citing *ILG Industries, Inc.*, 49 Ill. 2d at 93. By contrast, "[w]here information can be readily duplicated without involving considerable time, effort or expense, it is not a trade secret." *Delta Medical Systems*, 331 Ill. App. 3d at 791. Moreover, in a competitive market, an employee must be entitled to utilize the general knowledge and skills acquired through experience in pursuing his chosen occupation. *Delta Medical Systems*, 331 Ill. App. 3d at 791, citing *Service Centers of Chicago, Inc. v. Minogue*, 180 Ill. App. 3d 447, 452 (1989).

■ In this case, many of plaintiffs' claimed trade secrets fail to meet the statutory definition. Plaintiffs' attempt to claim as a trade secret their "customer list," *i.e.*, the names of the school districts, is patently false because this information is glaringly nonsecret. In fact, it and the "school district contract and bid date information" are publicly available. See 105 ILCS 5/10—20.21 (West 2006); *Delta Medical Systems*, 331 Ill. App. 3d at 792 (holding that information in the public domain is not a trade secret). Furthermore, plaintiffs fail in their attempt to fashion a trade secret from public information by including "the number and type of vehicles used" and "student attendance and days of attendance" with the list of the school districts. The number and type of vehicles used will necessarily depend on the needs of the individual school district, which the school districts will provide. In addition, and setting aside our puzzlement at the difference between "student attendance" and "days of attendance," not only are those items publicly available from the school districts or simple observation (*i.e.*, if the student is picked up, there is attendance; if not, then there is not), but also they change from day to day.

Plaintiffs also claim as a trade secret the "information" on Wagner's computer. This allegation fails because plaintiffs have failed to show that this " 'information' " is sufficiently secret to derive economic value or that its secrecy was adequately maintained. 765 ILCS 1065/2(d) (West 2006). We recognize that plaintiffs need not set out evidence, only the ultimate facts to be proved (see *Beretta U.S.A. Corp.*, 213 Ill. 2d at 369). Nonetheless, Illinois is a fact-pleading state, and a vague mention of computer information cannot reasonably be considered a well-pleaded fact. Plaintiffs' allegation therefore fails.

Plaintiffs also claim the list of the names, addresses, and phone numbers of its drivers is a trade secret. This cannot be considered a trade secret when weighing the factors used to determine whether a trade secret exists. It is beyond dispute that people outside of plaintiffs' business, as well as other employees in plaintiffs' business, would know the drivers' names, addresses, and phone numbers, which weighs against plaintiffs' claim of trade secrecy. Also weighing against

plaintiffs' contention is the fact that the information could be very easily acquired by competitors seeking to hire drivers by simply following the plaintiffs' drivers on their routes and asking them for their contact information. Finally, although the names and contact information of plaintiffs' school bus drivers would be of some value to its competitors, plaintiffs have not alleged that their drivers possess highly unique skills that cannot be replicated by any other school bus driver. Therefore, this information cannot reasonably be considered a trade secret.

Plaintiffs' claim that Alpha's financial statements constitute a trade secret, however, appears to meet the statutory definition of a trade secret. Plaintiffs allege that the financial statements are not publicly available and that only Cook-Illinois's executives have access to this information. Defendants respond that plaintiffs provided this information as a routine part of its bid packages, and they cite to a document in the record that appears to support their response. We note, however, that this count was dismissed pursuant to defendants' motion to dismiss under section 2—615, which limits the court to the " 'four corners of the complaint.' " *Baird & Warner Residential Sales, Inc. v. Mazzone*, 384 Ill. App. 3d 586, 591 (2008), quoting *Krueger v. Lewis*, 342 Ill. App. 3d 467, 471 (2003). Therefore, it appears that this information is not widely known outside of plaintiffs' business, or by their employees and others involved in the business. In addition, plaintiffs appear to have taken reasonable measures to maintain the secrecy of the information by restricting access to Cook-Illinois's executives. It also appears that this information cannot easily be duplicated by others. Therefore, even if the effort and cost in developing this information, as well as the value to plaintiffs and their competitors, were minimal, the factors relied upon in determining whether a trade secret exists would still weigh in favor of plaintiffs' claim. Despite this conclusion, plaintiffs' trade secrets misappropriation claim fails for another reason.

Section 2—606 of the Code provides that if a claim is "founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, *must* be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her." (Emphasis added.) 735 ILCS 5/2—606 (West 2006).

The record reveals that, for the first time in the litigation, Alpha alleged in its third amended complaint that defendants used Alpha's financial information to create a confidential investor memorandum and bank financing application for Southwest and Southwest Leasing, both of which contained, *inter alia*, this information. Plaintiffs,

however, failed to attach either document or an affidavit indicating why the document was unavailable, as required under section 2—606 of the Code. As a result, plaintiffs' assertion amounts to little more than a conclusory allegation, which must be rejected in deciding a motion to dismiss. See *Plocar v. Dunkin' Donuts of America, Inc.*, 103 Ill. App. 3d 740, 749 (1981) (holding that dismissal of a breach of contract claim was proper in light of the plaintiffs' failure to recite or attach a copy of the contract to the pleadings); *Rollins v. General American Transportation Corp.*, 46 Ill. App. 2d 266, 273 (1964) (holding that, although the plaintiff alleged a contract with one of the defendants to avoid dismissal based upon the lack of a duty, the trial court properly dismissed the cause because the plaintiff did not attach a copy or state the relevant terms of the contract). Therefore, even assuming *arguendo* that Alpha's financial information is a trade secret, plaintiffs have failed to properly plead the use of its financial information by defendants.

In essence, for all but one claimed trade secret, the pleadings, even when viewed in the light most favorable to plaintiffs, do not meet the statutory definition of a trade secret, which is a required element in a misappropriation of trade secrets claim. For the remaining claimed trade secret that met the statutory requirements, plaintiffs failed to properly plead that defendants used the information in their business, which is also a required element in a misappropriation of trade secrets claim. Therefore, plaintiffs did not plead a misappropriation of trade secrets claim as a matter of law, and the trial court properly dismissed this count.

### b. The Permanent Injunction Claim

Plaintiffs claim that the trial court erred in dismissing its claim seeking a permanent injunction. Specifically, plaintiffs alleged that Alpha had a clear and ascertainable right to: (1) the loyalty of Wagner as its "employee"; (2) the protection of its confidential business information; and (3) defendants' compliance with a prior stipulation and order. Plaintiffs then asserted that Alpha would be irreparably injured unless the trial court enjoined Wagner from working for Southwest, Southwest Leasing, "or any other entity *** in competition with Alpha," soliciting Alpha's employees, using Alpha's property (including trade secrets), and making derogatory remarks in violation of a stipulation entered into during the prior federal litigation.

Permanent injunctions are designed to extend or maintain the status quo indefinitely when the plaintiff has shown irreparable harm and has shown that there is no adequate remedy at law. *Sparks v. Gray*, 334 Ill. App. 3d 390, 396 (2002). The party seeking an injunc-

tion must demonstrate: "(1) a clear and ascertainable right in need of protection; (2) irreparable harm if injunctive relief is not granted; (3) no adequate remedy at law; and (4) success on the merits." *Hasco, Inc. v. Roche*, 299 Ill. App. 3d 118, 126 (1998).

▪ As a preliminary matter, we note that plaintiffs do not dispute, and the record does not belie, defendants' statement that plaintiffs never lodged a motion for a preliminary injunction with the trial court at the time plaintiffs filed their original complaint. As a result, we are at a loss to understand how a permanent injunction can turn back the hands of time to June 2004, given plaintiffs' failure to ask the trial court to preserve the status quo at that time. On this basis alone, we believe the trial court properly dismissed plaintiffs' demand for a permanent injunction.

Moreover, we further note that, at the outset of the complaint, plaintiffs alleged that Wagner was an officer of both plaintiffs until April 2003. Plaintiffs, however, then allege that Wagner made derogatory remarks "on or about February 28, 2005," when Wagner was clearly no longer an employee of either plaintiff. Plaintiffs therefore had no clear and ascertainable right to his loyalty as an employee after his employment terminated. In addition, as noted above, plaintiffs' claim for misappropriation of trade secrets fails as a matter of law, so they necessarily failed to properly allege irreparable harm. Finally, if, as plaintiffs allege, Wagner or the other defendants are violating the stipulation and order entered into during the prior federal litigation, plaintiffs have an adequate remedy with the federal district court.

B. The Granting of Defendants' Section 2—619 Motion to Dismiss

Plaintiffs also contend that the trial court erred in granting the Southwest defendants' section 2—619 motion to dismiss plaintiffs' first amended complaint, which dismissed Cook-Illinois as a party and dismissed all claims with respect to certain transportation contracts that plaintiffs' "sister corporations" bid on.

In a motion to dismiss brought under section 2—619, the movant may go beyond the allegations of the complaint and assert affirmative matters that would defeat the plaintiff's claim. 735 ILCS 5/2—619 (West 2006); *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485-86 (1994). The purpose of a section 2—619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Specifically, section 2—619(a)(9) of the Code of Civil Procedure permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or

defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2006). An affirmative matter in a section 2—619(a)(9) motion is something in the nature of a defense that completely negates the cause of action. *Van Meter*, 207 Ill. 2d at 367. Consequently, the moving party admits the legal sufficiency of the complaint, but asserts an affirmative defense or some other matter to defeat the plaintiff's claim. *Van Meter*, 207 Ill. 2d at 367. As with a motion brought under section 2—615, when ruling on a section 2—619 motion to dismiss, a court must view the pleadings and supporting documents in the light most favorable to the nonmoving party. *Van Meter*, 207 Ill. 2d at 367-68. We review *de novo* a section 2—619 dismissal. *Van Meter*, 207 Ill. 2d at 368.

### 1. The Dismissal of Cook-Illinois as a Party

▉ Plaintiffs contend that the trial court erred in dismissing Cook-Illinois as a party in their first amended complaint. Plaintiffs argue that Cook-Illinois had standing to prosecute the lawsuit because: (1) Alpha's earnings and profits were consolidated into Cook-Illinois's; (2) Wagner was an officer of both plaintiffs; (3) Cook-Illinois and Southwest were competitors; (4) Cook-Illinois provided its certificate of insurance to support its District 218 bid and its financial information to SWCCCASE in support of Alpha's bid; (5) "[p]roprietary information taken by the defendants was owned by Alpha and Cook-Illinois"; and (6) Wagner sent disparaging letters about Cook-Illinois in violation of a stipulation to which Cook-Illinois is a party.

In Illinois, standing is established by simply demonstrating some injury to a legally cognizable interest. *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 419 (2005). The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004), citing *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). A plaintiff need not allege facts establishing standing. *Winnebago County Citizens for Controlled Growth v. County of Winnebago*, 383 Ill. App. 3d 735, 739 (2008). Instead, the defendant has the burden to plead and prove lack of standing. *Winnebago County*, 383 Ill. App. 3d at 739. Lack of standing is an affirmative matter that may be asserted in a motion pursuant to section 2—619(a)(9) of the Code. 735 ILCS 5/2—619(a)(9) (West 2006); *International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security*, 215 Ill. 2d 37, 45 (2005). We review *de novo* the dismissal of a complaint for lack of standing, accepting as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor. *International Union*, 215 Ill. 2d at 45.

It is well established that a shareholder of a corporation seeking relief for an injury to the corporation, rather than a direct injury to the shareholder himself, must bring the suit derivatively on behalf of the corporation. *Small*, 306 Ill. App. 3d at 643. This is true even if the allegation is that an officer, director, or controlling shareholder has breached a duty to the corporation. *Lower v. Lanark Mutual Fire Insurance Co.*, 151 Ill. App. 3d 471, 473 (1986). An exception to this rule, however, allows a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated. *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58, 62 (2002). Determining whether an action is derivative or direct, however, requires a "strict focus on the nature of the alleged injury, *i.e.*, whether it is to the corporation or to the individual shareholder that injury has been done." *Sterling Radio Stations*, 328 Ill. App. 3d at 62, citing *Small*, 306 Ill. App. 3d at 644. Plaintiffs admit that Cook-Illinois is the controlling shareholder of Alpha. Therefore, unless the exception noted above applies, Cook-Illinois may only bring a derivative, not direct, action for any claimed injury to Alpha.

As noted above, the antitrust, civil conspiracy, and permanent injunctive relief counts were properly dismissed as a matter of law. These reasons are equally applicable to Cook-Illinois. Therefore, the trial court properly dismissed allegations by Cook-Illinois regarding those three counts.

Regarding count III, misappropriation of trade secrets, we have already held that this count failed as a matter of law, and therefore Cook-Illinois's standing necessarily fails. Moreover, although plaintiffs alleged that they (*i.e.*, Alpha *and* Cook-Illinois) had protectable trade secrets in various pieces of information and computer programs, the allegation indicates that defendants only used Alpha's purported trade secrets. There is no allegation that defendants used Cook-Illinois's claimed trade secrets. Because a necessary element of a misappropriation of trade secrets claim is the use by a defendant (see *Strata Marketing*, 317 Ill. App. 3d at 1071), this claim necessarily fails with respect to Cook-Illinois for this additional reason.

In addition, the trial court properly dismissed Cook-Illinois as a party with respect to count IV, which alleged tortious interference with prospective business opportunity. In the 17 paragraphs of this count, however, the only allegation directly involving Cook-Illinois claims that Wagner sent e-mail messages to SWCCCASE falsely stating that Cook-Illinois "left a child on a bus, that it had not picked up students for an entire week and that it was having trouble bussing students." Two paragraphs later, however, plaintiffs conclude that defendants "engaged in the forgoing fraudulent and disparaging

conduct" in order to obtain an unfair competitive advantage over *Alpha*, not Cook-Illinois. Tortious interference with prospect advantage or business opportunity consists of the following elements: (1) the plaintiff has a reasonable expectancy of entering into a business relationship; (2) the defendant knows of the expectancy; (3) the defendant interferes and prevents the realization of the business relationship; and (4) the defendant's interference actually damages the plaintiff. *McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 949 (1991). Plaintiffs have utterly failed to allege any of the four elements with respect to Cook-Illinois. Therefore, the trial court properly dismissed this count as it relates to Cook-Illinois.

Counts V and VI, tortious interference with contract and intentional interference with prospective advantage, suffer even greater infirmities because, other than an indirect reference to introductory paragraphs describing the parties, Cook-Illinois is not alleged whatsoever within the counts. Cook-Illinois was therefore properly dismissed with respect to this count.

The next count, breach of fiduciary duty, alleges that Wagner was an officer of Cook-Illinois and, *inter alia*, misappropriated its trade secrets, converted its property, and usurped its business opportunities. To state a cause of action for breach of fiduciary duty, a plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury. See *In re Estate of Lis*, 365 Ill. App. 3d 1, 8 (2006). It is well established that corporate officers owe a fiduciary duty to their corporations. See *Brown v. Tenney*, 125 Ill. 2d 348, 360 (1988). Although the majority of the alleged wrongful conduct by Wagner concerned Alpha, plaintiffs also alleged that Wagner converted seven boxes of records and files belonging to Alpha *and* Cook-Illinois, which would enable this claim to survive a motion to dismiss under section 2—619. Cook-Illinois therefore has standing with respect to a claim for breach of fiduciary duty on the part of Wagner, and the trial court erred in striking Cook-Illinois as a party to this claim.

Plaintiffs' first amended complaint also includes a count for violation of the Uniform Fraudulent Transfer Act (the Transfer Act) (740 ILCS 160/1 (West 2006)), which simply incorporates the same count from plaintiffs' original complaint. The original count, however, merely restated all prior 66 paragraphs in summary fashion, and then asserted that defendants "engaged in fraudulent transfers in violation of 740 ILCS 160/1, *et seq.*" Plaintiffs do not allege, however, how or what sections of the Transfer Act were violated. Plaintiffs only offer a one-sentence legal conclusion to support their allegation. Plainly, that is

insufficient as a matter of law, and the trial court properly dismissed this claim with respect to both parties, not only Cook-Illinois. Finally, plaintiffs' last count in its first amended complaint was directed at the Sunrise defendants for successor liability, but plaintiffs have dismissed the Sunrise defendants from this appeal, and we therefore need not address this issue.

## 2. The Claims Regarding the Lost Contracts Plaintiffs' "Sister Corporations" Bid on

█ Plaintiffs next contend that the trial court improperly struck allegations regarding contracts for special education transportation services to be provided to District 218 and CPS. The first amended complaint, however, includes allegations regarding District 218 and CPS only in the antitrust and civil conspiracy counts. We have already held, however, that the trial court properly dismissed those counts under section 2—615 as being legally insufficient. Therefore, even assuming *arguendo* that the trial court improperly struck those allegations, the antitrust and civil conspiracy counts could not be saved. Plaintiffs' contention of error is therefore unavailing. Furthermore, *Horan v. Klein's-Sheridan, Inc.*, 62 Ill. App. 2d 455 (1965), which plaintiffs cite in support of their contention, only holds in general that a plaintiff may recover all damages that are proximately related to a defendant's wrongful acts, but does not otherwise advance plaintiffs' claim. *Horan* is therefore inapt.

## C. The Dismissal of Plaintiffs' Third Amended Complaint with Prejudice

Plaintiffs' final claim of error is that the trial court erred in dismissing their third amended complaint without granting them leave to amend. Plaintiffs argue that they should have been granted an opportunity to amend their complaint.

█ As a general rule, a trial court should exercise its discretion liberally in favor of allowing amendments if doing so will further the ends of justice, and it should resolve any doubts in favor of allowing amendments. *Cantrell v. Wendling*, 249 Ill. App. 3d 1093, 1095 (1993). The right to amend a complaint, however, is not absolute. *Strickland v. Communications & Cable of Chicago, Inc.*, 304 Ill. App. 3d 679, 686 (1999). A trial court should consider the following factors in deciding whether to allow an amendment: (1) whether the proposed amendment would cure defective pleadings; (2) whether other parties would sustain prejudice or surprise because of the proposed amendment; (3) the timeliness of the proposed amendment; and (4) whether there were earlier opportunities to amend. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). We will not reverse a

trial court's denial of leave to amend absent a clear abuse of discretion. *Loyola Academy*, 146 Ill. 2d at 273-74.

■ In this case, there is nothing in the record to indicate that plaintiffs provided the trial court any possible amendments prior to the trial court's ruling on defendants' motion to dismiss. Rather, plaintiffs filed a notice of appeal with this court. Although it is possible that plaintiffs may have orally informed the trial court as to possible cures to their defective pleadings at the hearing on defendants' motion to dismiss, but we have no transcript of that hearing in order to evaluate whether the trial court committed a clear abuse of discretion. Because we are bound by the rules that any doubts arising from an incomplete record must be construed against the appellant (here, plaintiffs) and that the order entered by the trial court was in conformity with the law and had a sufficient factual basis (see *Foutch*, 99 Ill. 2d at 392), we must reject plaintiffs' final contention of error. Accord *Richco Plastic Co. v. IMS Co.*, 288 Ill. App. 3d 782, 785-86 (1997); see also *Bellik v. Bank of America*, 373 Ill. App. 3d 1059, 1065-66 (2007), and *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 461 (1995).

## III. CONCLUSION

For the aforementioned reasons, we find that the Trade Secrets Act does not preempt either (1) Alpha's inducement of breach of fiduciary duty claim against Hackel, or (2) both plaintiffs' breach of fiduciary duty claim against Wagner, and therefore reverse those portions of the trial court's order and remand the matter for further proceedings. We otherwise affirm the judgment of the trial court.

Affirmed in part and reversed in part; cause remanded for further proceedings.

CAHILL and McBRIDE, JJ., concur.