# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*In re Huron Consulting Group, Inc.*, 2012 IL App (1st) 103519

| | |
|---|---|
| Appellate Court Caption | *In re* HURON CONSULTING GROUP, INC., SHAREHOLDER DERIVATIVE LITIGATION (Brian Hacias, Plaintiff-Appellant, v. Huron Consulting Group, Inc., a Delaware Corporation; George E. Massaro, Dubose Ausley, James D. Edwards, H. Eugene Lockhart, John S. Moody, and John F. McCartney, In their Capacity as Members of the Board of Directors; Gary Holdren, Gary Burge, and Wayne Lipski, Individually; and PricewaterhouseCoopers, LLP, Defendants-Appellees). |
| District & No. | First District, Second Division<br>Docket No. 1-10-3519 |
| Filed | March 27, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's shareholder derivative action alleging breach of fiduciary duty, unjust enrichment, gross mismanagement and waste of corporate assets arising from accounting irregularities and financial losses over a period of several years was properly dismissed on the ground that plaintiff failed to adequately plead demand futility as required under the applicable law, regardless of his contention that making a demand on the board of directors to bring the action would have been futile. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-30826; the Hon. Martin S. Agran, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Robert B. Weiser, Brett D. Stecker, Jeffrey J. Ciarlanto, and Joseph M. Profy, all of Weiser Law Firm, P.C., of Wayne, Pennsylvania, and Mathew T. Hurst, of Susman Heffner & Hurst LLP, of Chicago, for appellant. |
| | |
| | Thomas P. Cimino, Jr., and Jeanah Park, both of Vedder Price, P.C., of Chicago, for appellee Gary Holdren. |
| | |
| | Walter C. Carlson, David A. Gordon, and Nilofer Umar, all of Sidley Austin LLP, of Chicago, for appellee Gary Burge. |
| | |
| | Charles F. Smith and Gretchen M. Wolf, both of Skadden, Arps, Slate, Meagher & Flom LLP, of Chicago, for appellee Wayne Lipski. |
| | |
| | Emily Nicklin, John F. Hartmann, Timothy A. Duffy, and Jennifer Cowen, all of Kirkland & Ellis LLP, of Chicago, for appellee PricewaterhouseCoopers, LLP. |
| | |
| | Richard W. Clary and Rachel G. Skaistis, both of Cravath, Swaine & Moore LLP, of New York, New York, and Richard J. Prendergast and Michael T. Layden, both of Richard J. Prendergast, Ltd., of Chicago, for other appellees. |
| | |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. Presiding Justice Quinn and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff Brian Hacias filed this consolidated shareholder derivative lawsuit on behalf of Huron Consulting Group. He asserted several claims of breach of fiduciary duty, unjust enrichment, gross mismanagement, and waste of corporate assets against Huron, the members of its board of directors, and three former executives arising out of accounting irregularities and financial losses sustained over the course of several years. He also asserted breach of contract and professional negligence claims against Huron's independent auditor.

Plaintiff also alleged that he did not make a demand on the board of directors to bring this lawsuit on Huron's behalf, as he was required to do under applicable law, because such a demand would be futile. The circuit court dismissed his complaint for failing to adequately plead demand futility. Plaintiff now appeals, alleging that the circuit court erred in considering extrinsic evidence when evaluating the sufficiency of the allegations in his complaint. Additionally, he claims that the circuit court erroneously denied his motion for leave to amend the complaint. For the following reasons, we affirm.

¶ 2                                      I. BACKGROUND

¶ 3        Plaintiff is a shareholder of Huron Consulting Group, a Delaware corporation. Defendants include several Huron executives employed at the time that the alleged wrongdoing occurred in this case (executive defendants). Gary Holdren was Huron's chief executive officer, chairman, and president. Wayne Lipski was Huron's chief accounting officer. Gary Burge was Huron's vice president, treasurer, and chief financial officer. Plaintiff also named members of the board of directors as defendants, including George Massaro, Dubose Ausley, James Edwards, H. Eugene Lockhart, John Moody, and John McCartney (director defendants). Huron is also a nominal defendant in this action. Additionally, plaintiff named PricewaterhouseCoopers, Huron's independent auditor, as a defendant in this case.

¶ 4        Huron provides accounting, financial, and corporate transaction services in various industries. Huron experienced rapid growth between October 2004 and July 2009, primarily due to its aggressive strategy of acquiring other accounting and consulting firms. In an effort to retain the employees of the consulting firms it acquired, it allocated to the owners of the acquired firms, the so-called "selling shareholders," millions of dollars to distribute to their employees as financial incentives to keep them employed with Huron after the acquisition.

¶ 5        Providing such bonuses to future employees is common practice and the "Generally Accepted Accounting Principles" (GAAP) instruct that such retention payments must be accounted for as compensation expenses. As such, the expenses would offset Huron's earnings. However, between 2006 and early 2009, Huron accounted for the incentive payments as "goodwill," which did not offset earnings and had the effect of artificially increasing Huron's earnings per share. Plaintiff alleges that by "materially understat[ing its] publicly reported expenses," Huron "deceiv[ed] Wall Street analysts and other financial market participants concerning Huron's true financial performance" between 2006 and early 2009.

¶ 6        On July 31, 2009, Huron publicly acknowledged that it improperly accounted for the incentive payments between 2006 and early 2009 and admitted that it "materially misstated" its financial results. Huron announced that it would have to restate its financial results for those years. Huron's restatement of earnings revealed that it overstated its income by a total of $57 million. Consequently, plaintiff alleged, instead of meeting or exceeding analysts' expectations during that period, Huron would have missed its expectations every quarter. Huron also announced that the Securities and Exchange Commission (SEC) and the United States Attorney's Office (USAO) for the Northern District of Illinois opened inquiries into

Huron's practices.

¶ 7 Huron also announced that three of its executives had resigned as a consequence of these accounting issues. Holdren resigned as chairman and chief executive officer, Lipski resigned as Huron's chief accounting officer, and Burge resigned as vice president, treasurer, and chief financial officer. However, Huron announced that Burge would continue to serve as treasurer until the end of 2009.

¶ 8 After making these announcements, plaintiff alleged, Huron's stock dropped by more than 69%, representing a marketing capitalization loss of over $650 million. Plaintiff alleged that notwithstanding Huron's financial issues, the members of the board of directors earned an average of $330,438 in annual salary. That amount was "higher than the average director compensation awarded at 16 of the top 20 Fortune 500 companies."

¶ 9 As a result of the accounting errors and resulting financial losses, plaintiff filed this 10-count derivative complaint. Plaintiff asserted three counts of breach of fiduciary duty against the directors and the executives. He alleged a separate breach of fiduciary duty claim against the directors alone. Plaintiff also asserted claims for unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets against the directors and executives. Plaintiff also asserted professional negligence and breach of contract claims against PricewaterhouseCoopers.

¶ 10 Because this is a shareholder derivative suit, plaintiff was required by Delaware Chancery Court Rule 23.1 (Del. Ch. Ct. R. 23.1) to either plead that he made a demand on the board of directors to bring this lawsuit on behalf of Huron or state with particularity why making such a demand would have been futile. Plaintiff did not make a demand but, rather, pleaded demand futility. Generally, he asserted that the directors were incapable of evaluating the demand claim in a disinterested and independent manner that protects the best interests of the corporation. The detailed allegations of plaintiff's demand futility claims will be discussed in our analysis below.

¶ 11 Huron and the director defendants (hereinafter, collectively referred to as defendants) filed a combined motion to dismiss plaintiff's complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2008)). They sought dismissal of the complaint under sections 2-619(a)(2) and 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(2), (a)(9) (West 2008)), arguing that plaintiff lacked standing to bring the claim on Huron's behalf because he had not established that making a demand on Hurons directors would have been futile.[1] They also sought dismissal under section 2-615 of the Code based on plaintiff's failure to state a claim for relief with respect to the 10 derivative claims. 735 ILCS 5/2-615 (West 2008).

---

[1]On appeal, the executive defendants adopted the arguments made by Huron and the director defendants as to demand futility, which arguments are based on the latter's motion to dismiss. Although PricewaterhouseCoopers challenges plaintiff's demand futility differently based on its position as a third party, we need not address that argument or any of plaintiff's substantive claims if we decide as a threshold matter that plaintiff lacks authority to bring claims on Huron's behalf, against itself or a third party, because he has not adequately pleaded demand futility.

¶ 12     In support of their section 2-619(a) motion, defendants attached the "Declaration of J. Wesley Earnhardt," who is "an associate at Cravath, Swaine & Moore LLP and counsel to defendant Huron Consulting Group, Inc." Earnhardt attached 14 documents to the "declaration," which he described as "true and correct" copies of those documents. Among those documents were certain public filings of defendant Huron, FTI Consulting, Inc., and CRA International, Inc., filed under the Securities Exchange Act of 1934 (15 U.S.C. § 78a (2010)); a "letter sent by Robert B. Weiser, Esq. and Joseph Gentile, Esq. to Richard Prendergast, Esq. on September 29, 2009"; a "letter sent by Francis P. Barron, Esq. to Robert B. Weiser, Esq. and Joseph Gentile, Esq. on October 1, 2009"; a memorandum of law in support of defendants' motion to stay a cause of action pending in federal court; a copy of a consolidated derivative complaint filed in that federal action on January 15, 2010; and a copy of the minute order denying the motion to stay.

¶ 13     The circuit court granted defendants' motion to dismiss with prejudice "for failure to satisfy Delaware law." In analyzing each of plaintiff's demand futility allegations, the court relied upon the documents contained in the Earnhardt declaration. The court concluded that plaintiff failed to establish that demand was excused and, therefore, he could not "obtain relief on any of the claims raised" in the complaint. This appeal followed.

¶ 14                                          II. ANALYSIS
¶ 15                                        A. Derivative Suit
¶ 16     A shareholder derivative suit permits an individual shareholder to bring suit " 'to enforce a *corporate* cause of action against officers, directors, and third parties.' " (Emphasis in original.) *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). It was intended as a vehicle to allow shareholders to protect a corporation's interests from " 'faithless directors and managers.' " *Kamen*, 500 U.S. at 95 (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)). However, to preserve the balance of control, the shareholder must first demonstrate as a precondition to bringing suit that he made a demand on the corporation to pursue the action and that the demand had been refused or that the demand was " 'excused by extraordinary conditions.' " *Kamen*, 500 U.S. at 96 (quoting *Ross*, 396 U.S. at 534).

¶ 17     The demand requirement is not merely a matter of procedure. *Kamen*, 500 U.S. at 96-97. Rather, it is a substantive determination as to who has the power to control corporate litigation; in essence, it reallocates the governing powers within the corporation. *Kamen*, 500 U.S. at 101. Because corporations are "creatures of state law" and state law is the "font of corporate directors' powers," the substantive law of the state of incorporation applies in determining whether the shareholder has adequately established that he has satisfied the demand requirement to proceed with the litigation on the corporation's behalf. (Internal quotation marks omitted.) *Kamen*, 500 U.S. at 98-99.

¶ 18     Here, the parties agree that because Huron is incorporated in Delaware, the demand requirement is governed by Delaware Chancery Rule 23.1 (Del. Ch. Ct. R. 23.1). Rule 23.1 provides:
           "The complaint shall also allege with particularity the efforts, if any, made by the

plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Del. Ch. Ct. R. 23.1(a).

The derivative plaintiff is required to make a demand on the board of directors to address the alleged wrongdoing on the corporation's behalf. The directors must be allowed to "rectify an alleged wrong without litigation, and to control any litigation which does arise." (Internal quotation marks omitted.) *Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006). Alternatively, the plaintiff must sufficiently allege with particularity that the demand requirement is excused because it would be futile. Generally, the demand requirement will be deemed futile where the derivative plaintiff establishes that there is reason to doubt the board's ability to evaluate the demand in a disinterested and independent manner. *Braddock*, 906 A.2d at 784.

¶ 19                                B. *Res Judicata*

¶ 20        As an initial matter, defendants submit that we should affirm dismissal of plaintiff's derivative suit because it is barred by *res judicata.* Defendants claim that while this matter was pending on appeal, the United States District Court for the Northern District of Illinois dismissed the same claims of demand futility asserted by other derivative plaintiffs against these defendants in *Oakland County Employees' Retirement System v. Massaro*, 772 F. Supp. 2d 973 (N.D. Ill. 2011). Therefore, they argue, the district court's ruling bars "this action." Plaintiff contends that under Delaware law, which he claims is applicable here, a dismissal for failure to adequately plead demand futility must be made without prejudice and, therefore, it is nonfinal for *res judicata* purposes, citing *West Coast Management & Capital, LLC v. Carrier Access Corp.*, 914 A.2d 636, 645 n.32 (Del. Ch. 2006), for support.

¶ 21        The parties' arguments raise several novel legal issues. For example, we are not convinced that this matter should be analyzed under the doctrine of *res judicata* as opposed to the doctrine of collateral estoppel. See *West Coast Management*, 914 A.2d at 642-43 (discussing the trend among federal courts to apply collateral estoppel when evaluating demand futility claims brought by subsequent derivative plaintiffs because the corporation, as the true party in interest, retains the right to pursue the underlying lawsuit). Additionally, although this case was filed in Illinois and is allegedly precluded by a prior decision rendered by a federal district court sitting in Illinois, plaintiff contends that we should apply Delaware's preclusion law because it is part of the substantive analysis of a Rule 23.1 pleading. But see *Allianz Insurance Co. v. Guidant Corp.*, 387 Ill. App. 3d 1008, 1022 (2008) (explaining that there are conflicting decisions in Illinois as to whether the law of the forum state or the law of the rendering jurisdiction applies in determining the preclusive effect of a prior judgment); see also *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77-78 (2001) (tacitly applying the preclusion law of the forum state). However, we need not resolve these issues here because under the preclusion law of any of these jurisdictions, *Massaro* has no preclusive effect on the claims alleged in plaintiff's derivative suit.

¶ 22        Res judicata and collateral estoppel are equitable doctrines designed to promote judicial

economy and encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113 (1986). *Res judicata*, or claim preclusion, refers to the preclusive effect that a final judgment has to foreclose relitigation of claims that were, or could have been, raised in an earlier suit between parties or their privies. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n.1 (1984); *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). Collateral estoppel, or issue preclusion, prevents relitigation of issues of law or fact that have previously been litigated and decided in an action involving the same parties or their privies. *Migra*, 465 U.S. at 77 n.1; *Du Page Forklift Service*, 195 Ill. 2d at 77.

¶ 23    The assumption underlying both of these doctrines is that the judgment alleged to have a preclusive effect must have been rendered before the judgment in the case in which preclusion is asserted. *Allianz*, 387 Ill. App. 3d at 1025-26 (citing *Freeman United Coal Mining Co. v. Office of Workers' Compensation Program*, 20 F.3d 289, 294 (7th Cir. 1994)). To hold otherwise would work to undo a valid judicial opinion and elevate one court's holding above another's. Such a result would impinge on the principles of comity and full faith and credit upon which these doctrines rest. See *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Allianz*, 387 Ill. App. 3d at 1021.

¶ 24    In this case, the circuit court entered its judgment on plaintiff's demand futility claim on October 25, 2010. However, the federal district court did not issue its final judgment in *Massaro* until March 22, 2011. Thus, the *Massaro* decision cannot have a preclusive effect on the circuit court's judgment because *Massaro* was issued after that judgment and, therefore, would not prevent relitigation of previously adjudicated matters. On the contrary, the circuit court's decision in the case below may have had a preclusive effect on the district court's judgment.

¶ 25    We also note parenthetically that section 2-619(a)(3) of the Code permits dismissal of a claim where there is another action pending between the same parties for the same cause. 735 ILCS 5/2-619(a)(3) (West 2008). In the past, litigants have successfully asserted section 2-619(a)(3) as a basis for dismissal in similar situations, as was done by the corporate defendant in *Schnitzer v. O'Connor*, 274 Ill. App. 3d 314 (1995), which defendants relied upon in this case to support their *res judicata* argument. Nevertheless, it does not appear that defendants advanced section 2-619(a)(3) as a basis for dismissal.

¶ 26    Regardless, neither *res judicata* nor collateral estoppel applies where the allegedly preclusive judgment was issued after the order in the case below. Applying either doctrine here would undo the order of the circuit court, which is a result not contemplated by the doctrine. See *Allianz*, 387 Ill. App. 3d at 1025-26 (citing *Freeman United*, 20 F.3d at 294). Therefore, *Massaro* has no preclusive effect to bar plaintiff's demand futility claim in the case below.

¶ 27                              C. Motion to Dismiss

¶ 28    Generally, plaintiff's argument on appeal challenges the circuit court's reliance on extrinsic evidence attached to defendants' motion to dismiss to determine whether he made sufficient allegations of demand futility. Plaintiff's counsel acknowledged at oral argument

that Illinois procedural law governs in this case, but nevertheless argued that plaintiff is only required to adequately plead, not prove, that demand is futile under Delaware law. He claims that the circuit court erred in relying on the contents of the Earnhardt declaration, attached to defendants' motion, to determine whether his pleading was sufficient.

¶ 29 Defendants filed their motion to dismiss under section 2-619(a)(2) of the Code of Civil Procedure.[2] 735 ILCS 5/2-619(a)(2) (West 2010). Section 2-619(a)(2) provides:

> "Defendant may *** file a motion for dismissal of the action *** upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:
>
> ***
>
> (2) That the plaintiff does not have legal capacity to sue ***."

Based on the legal propositions set forth in *Kamen*, defendants argued that plaintiff is not entitled to bring a derivative suit on Huron's behalf because he failed to adequately plead demand futility under Rule 23.1. Therefore, defendants argued, plaintiff lacked legal capacity to sue and his derivative complaint should be dismissed on that basis.

¶ 30 Pursuant to the plain language of section 2-619(a), a defendant is entitled to submit an affidavit in support of a motion to dismiss if the grounds for dismissal do not appear on the face of the complaint. Although the Earnhardt "declaration" is of questionable validity to serve as an affidavit given its failure to comply with Illinois Supreme Court Rule 191 (eff. July 1, 2002)–in light of Earnhardt's failure to provide sworn or certified copies of any of the documents submitted and his incompetence to provide foundation for the attorney letters at least (see *Evergreen Oak Electrical Supply & Sales Co. v. First Chicago Bank of Ravenswood*, 276 Ill. App. 3d 317, 319-20 (1995))–plaintiff did not move to strike it. Thus, from a procedural perspective, the court did not err in considering the materials contained in the "declaration" while evaluating the section 2-619 motion.

¶ 31 Nevertheless, the circuit court erred in dismissing plaintiff's complaint for lack of standing under that section. A motion for involuntary dismissal under section 2-619 "admits the legal sufficiency of the plaintiff's complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim." *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 455 (2011). Here, defendants argued that plaintiff lacked standing because he failed to adequately plead demand futility. That is, defendants' challenge to standing was based solely on the sufficiency of plaintiff's allegations of demand futility. However, by moving for dismissal under section 2-619, defendants necessarily admitted the legal sufficiency of plaintiff's complaint, as defendants' counsel acknowledged at oral argument. Therefore, defendants' argument fails and their motion to dismiss under section 2-619 should have been denied.

---

[2]Defendants also nominally assert dismissal under section 2-619(a)(9), based on an "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). However, defendants made no specific arguments identifying an affirmative matter as a basis for dismissal under that section.

¶ 32    A review of the relevant case law supports this concept. In *Brehm v. Eisner*, the Delaware Supreme Court articulated the legal framework to be applied to Rule 23.1 demand futility claims. *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). It held that when evaluating such claims, a court is "merely reading the English language of a pleading and applying to that pleading statutes, case law[,] and Rule 23.1 requirements. To that extent, [the] scope of review is analogous to that accorded a ruling under [Delaware Chancery Court] Rule 12(b)(6) [governing motions to dismiss for 'failure to state a claim upon which relief may be granted].' " *Brehm*, 746 A.2d at 254. Similarly, under Illinois procedural law, a section 2-615 motion to dismiss attacks the legal sufficiency of the complaint, assessing " 'whether the allegations of the complaint *** are sufficient to establish a cause of action upon which relief may be granted.' " *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009) (quoting *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004)). Although there may be situations in which a section 2-619 motion to dismiss is the proper vehicle to challenge a derivative suit that includes a demand futility claim, under these circumstances, defendants should have sought dismissal under section 2-615 of the Code. See, *e.g.*, *Sherman v. Ryan*, 392 Ill. App. 3d 712, 721 (2009) (affirming dismissal of a derivative suit under section 2-615 where plaintiff failed to adequately plead demand futility).

¶ 33    Indeed, plaintiff has argued in this court and in the court below that his complaint should be reviewed under the section 2-615 standard and that his allegations be evaluated without consideration of extrinsic evidence, specifically, the Earnhardt declaration. In light of the fact that we review a motion to dismiss *de novo*, whether it is brought under section 2-615 or section 2-619, and considering that plaintiff bears the burden of establishing that his complaint sufficiently alleges demand futility under Rule 23.1 (*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004)), we will review the adequacy of plaintiff's demand futility claim under the standards of section 2-615. See *In re Marriage of Siegel*, 271 Ill. App. 3d 540, 544 (1995). In any event, we may affirm the circuit court's decision on any basis supported by the record. *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 48.

¶ 34                           D. Demand Futility

¶ 35    When reviewing a motion to dismiss for failure to state a claim, we accept as true all well-pleaded factual allegations in the complaint and construe all reasonable inferences therefrom in favor of the plaintiff. *Sherman*, 392 Ill. App. 3d at 722. However, we need not consider mere conclusions of law or fact unsupported by specific factual allegations. *Sherman*, 392 Ill. App. 3d at 722. Furthermore, demand futility allegations must be stated "with particularity," elevating the pleading requirements under Rule 23.1 beyond that which is required to survive an ordinary challenge under section 2-615 or its equivalent. *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

¶ 36    Demand futility claims are analyzed under one of two legal standards. The *Aronson* standard applies where the challenged action forming the basis of the derivative lawsuit involves specific business decisions of the directors and the exercise of their business judgment. *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); *Aronson v. Lewis*, 473 A.2d

805, 812 (Del. 1984), *overruled on other grounds*, *Brehm*, 746 A.2d at 254. Under the *Aronson* standard, "demand will be excused if the derivative complaint pleads particularized facts creating a reasonable doubt that (1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." (Internal quotation marks omitted.) *Braddock*, 906 A.2d at 784.

¶ 37     On the other hand, where the subject of the derivative suit does not attack an affirmative decision of the board, the *Aronson* standard does not apply. *Braddock*, 906 A.2d at 784. That is, "[w]here there is no conscious decision by directors to act or refrain from acting, the business judgment rule has no application," making it "impossible to perform the essential inquiry contemplated by *Aronson*." *Rales*, 634 A.2d at 933. In such cases, demand is excused only where "the particularized factual allegations create a reasonable doubt that, [at] the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Braddock*, 906 A.2d at 785 (listing the three situations in which the *Rales* standard applies) (citing *Rales*, 634 A.2d at 934).

¶ 38     Plaintiff's complaint alleges that making a demand on the board would have been futile for four reasons. Three of the asserted reasons challenge the directors' ability to consider a demand in a disinterested and independent manner, which implicates the *Rales* standard. The remaining claim implicates the *Aronson* standard. We will analyze each claim in turn.

¶ 39                              1. *Rales* Claims

¶ 40     To determine whether the board of directors could have impartially considered a demand at the time it was presented, as the *Rales* standard requires, we look to the nature of the decision faced by the directors in evaluating a shareholder demand. *Rales*, 634 A.2d at 935. Addressing a demand is a two-step process: first, the directors must inform themselves of the relevant legal and financial facts implicated by the challenged action; and second, they must weigh the alternatives available for resolving the issues, including "implementing internal corrective action and commencing legal proceedings." *Rales*, 634 A.2d at 935. The directors must be able to act independently of "personal financial interest and improper extraneous influences." *Rales*, 634 A.2d at 935.

¶ 41                           a. Director Compensation

¶ 42     Plaintiff first alleges that "a majority of the directors lack independence from each other and/or other interested directors." Because they receive "materially higher" director fees as compared to directors at other corporations, there is "cause to doubt the[ir] independence" in "considering a demand to commence and vigorously prosecute this action." Again, the plaintiff must plead with particularity that there is reason to doubt that a majority of the directors could evaluate a demand using their "independent and disinterested business judgment." *Braddock*, 906 A.2d at 785.

¶ 43     Director independence examines a director's ability to make an impartial decision notwithstanding the fact that he is presumed disinterested. *Rales*, 634 A.2d at 936. That is, independence questions whether " 'a director's decision is based on the corporate merits of

-10-

the subject before the board rather than extraneous considerations or influences.' " *Rales*, 634 A.2d at 936 (quoting *Aronson*, 473 A.2d at 816). To demonstrate lack of independence, a plaintiff must show that a majority of directors are "beholden" to an interested director or "so under [his] influence that [the directors'] discretion would be sterilized." *Rales*, 634 A.2d at 936 (citing *Aronson*, 473 A.2d at 815). The allegation of influence may be based on " 'financial ties, familial affinity, a particularly close or intimate personal or business affinity or *** evidence that in the past the relationship caused the director to act non-independently vis-à-vis an interested director.' " *Sherman*, 392 Ill. App. 3d at 725 (quoting *Beam*, 845 A.2d at 1051).

¶ 44        Here, plaintiff cannot establish that the majority of directors lack independence because he has not demonstrated–or even alleged–which of the directors they are beholden to or how those directors may be "interested." An "interested" director is one who "receive[s] a personal financial benefit from a transaction that is not equally shared by the stockholders." *Rales*, 634 A.2d at 936. In *Rales*, the court concluded that there was reason to doubt that two directors of a corporation, Sherman and Ehrlich, could evaluate a demand claim independently because they were beholden to two other directors, the Rales brothers, who were "interested" in whether the board brought suit pursuant to a shareholder demand. *Rales*, 634 A.2d at 936. The Rales brothers were sufficiently alleged to have invested corporate funds in such a way that benefitted themselves. *Rales*, 634 A.2d at 936 (citing *Blasband v. Rales*, 971 F.2d 1034, 1052 (3d Cir. 1992)).

¶ 45        The plaintiff in *Rales* sufficiently alleged that Sherman and Ehrlich were "beholden" to the Rales brothers. *Rales*, 634 A.2d at 936. Sherman earned $1 million per year as the chief executive officer of a company and the Rales brothers served as that company's chairman of the board and chairman of the board's executive committee, which positions "place[d] them in a position to exert considerable influence over Sherman." *Rales*, 634 A.2d at 937. Similarly, the Rales brothers owned the majority of stock in a company for which Ehrlich and his two brothers served as high-level executives and wielded substantial influence over the Ehrlich brothers. *Rales*, 634 A.2d at 937. The court found that Sherman and Ehrlich both had personal financial stakes in maintaining their employment and the Rales brothers had substantial influence over their ability to remain employed. That was sufficient to allege that Sherman and Ehrlich were beholden to the Rales brothers such that they could not independently evaluate a demand futility claim that implicated the Rales brothers. *Rales*, 634 A.2d at 936-37.

¶ 46        However, plaintiff has not done the same in this case. He asserted that a majority of the directors lacked independence from each other, but did not assert or demonstrate that any one of them was "interested" as that term is defined by the Delaware Supreme Court. His allegations that individual directors lacked independence is merely a comparison of the fees Huron paid its directors and fees awarded to directors of other Fortune 500 companies he selected. He then concludes that "[b]ecause of the sheer size of the atypical director fees" awarded to each director in this case, "there is reason to doubt [their] independence from other directors, rendering [them] incapable of impartially considering a demand to commence and vigorously prosecute this action." Plaintiff cannot survive dismissal based on such conclusory statements. See *Sherman*, 392 Ill. App. 3d at 722. More importantly, plaintiff

-11-

failed to allege that any director has used his influence to pressure the others to do his bidding to further his personal interests, as the test for "independence" requires under *Rales*. Therefore, plaintiff has not alleged with particularity that demand should be excused as futile because the directors lacked independence.

¶ 47                              b. Director Oversight Liability

¶ 48    Plaintiff also alleges that defendants McCartney, Edwards, and Ausley, who were members of the board's audit committee, face a "substantial likelihood of liability" for breaching their fiduciary duties in "allow[ing] *** false and misleading statements to be disseminated in [Huron's] SEC filings *** and, otherwise, fail[ing] to ensure that adequate internal controls were in place regarding the serious accounting issues and deficiencies." Additionally, plaintiff alleges that defendants Moody, Ausley, Lockhart, and McCartney, who were members of the board's compensation committee, face a "substantial likelihood of liability" for breach of their fiduciary duties in permitting the compensation problems at the acquired companies to go "unnoticed and uninvestigated." He alleged that the compensation committee is responsible for "review[ing] matters of general compensation and conduct[ing] investigations (and retain[ing] independent counsel and/or advisors) into matters within [its] purview."

¶ 49    Although plaintiff does not specifically state it, these claims of "director oversight liability" attack the directors' ability to evaluate a demand claim in a disinterested manner. *Rales*, 634 A.2d at 936 (stating that "[d]irectorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation [or] stockholders"). Where such director oversight liability is alleged, the plaintiff must establish that (1) "the directors utterly failed to implement any reporting or information system or controls"; or (2) "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). Under either scenario, the "imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." *Stone*, 911 A.2d at 370. A breach of fiduciary duty exists only where the "directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities." *Stone*, 911 A.2d at 370.

¶ 50    Reading plaintiff's allegations generously, they resemble the allegations made in *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959, 967 (Del. Ch. 1996), where the plaintiff alleged that the defendants "allowed a situation to develop and continue which exposed the corporation to enormous legal liability and that in doing so they violated a duty to be active monitors of corporate performance," bringing it within the second theory of director oversight liability. *Caremark*, 698 A.2d at 967; see also *Stone*, 911 A.2d at 370. This so-called *Caremark* claim has been referred to as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment" because it attempts to hold directors personally liable for the bad acts of its employees. (Internal quotation marks omitted.) *Stone*, 911 A.2d at 372 (quoting *Caremark*, 698 A.2d at 967-68); *Sherman*, 392 Ill.

-12-

App. 3d at 727.

¶ 51　　To establish this type of claim, plaintiff would have to allege with particularity that there was " 'a sustained or systematic failure of the board to exercise oversight–such as an utter failure to attempt to assure a reasonable information and reporting system exists–[which] establish[es] the lack of good faith that is a necessary condition to liability.' " *Stone*, 911 A.2d at 372 (quoting *Caremark*, 698 A.2d at 971). Here, according to plaintiff's own complaint, the board of directors created the audit committee whose charter required it to "[r]eview[ ] the adequacy and effectiveness of [Huron's] accounting and internal control policies and procedures on a regular basis" and "[r]eview[ ] with management *** reports determining the accounting treatment for payments to be made by [Huron] on an initial and ongoing basis in connection with acquisitions," among other things.

¶ 52　　In this case, as in *Stone*, plaintiff seeks "to equate a bad outcome with bad faith." *Stone*, 911 A.2d at 373. The reality is that plaintiff acknowledged that the directors had a reasonable information and reporting system in place. Although the reporting system may have failed in this case, without more, that cannot subject the directors to personal liability for failures by Huron's "senior management" to report the improper accounting of retention payments. See *Stone*, 911 A.2d at 372. Plaintiff has alleged no "red flags" demonstrating that the audit committee defendants knew that Huron's "internal controls were inadequate, that these inadequacies would result in illegal activity, and that the board chose to do nothing about problems it allegedly knew existed." (Internal quotation marks omitted.) *Stone*, 911 A.2d at 370. Therefore, plaintiff has failed to establish that demand futility is based on director oversight liability.

¶ 53　　Nor did plaintiff allege any such red flags with respect to the compensation committee defendants. He alleged that those defendants were obligated to review general compensation issues. Although plaintiff alleged that those defendants "permitted" the retention payments "to go unnoticed and uninvestigated," he never alleged that they knew that their oversight process was inadequate, that the failure of oversight would result in illegal activity, or that they simply chose to ignore any such problems. Thus, plaintiff also cannot establish demand futility through this director oversight liability claim.

¶ 54　　Generally, our conclusions here are based on the allegations identified in plaintiff's complaint as "Demand Futility Allegations." To the extent that plaintiff may rely on other allegations in his 229-paragraph complaint to imply that a majority of the director defendants knowingly abdicated their fiduciary duties, those allegations are insufficient to establish demand futility. Plaintiff's allegations of various wrongdoing implicate the actions of the "Individual Defendants," whom he described as including the six director defendants as well as the three executive defendants. However, plaintiff is required to show that the "*directors are potentially personally liable for the failure of non-director [Huron] employees*" to properly account for the retention payments. (Emphases in original.) *Stone*, 911 A.2d at 372. Plaintiff's general allegations of bad faith by any one of those nine "Individual Defendants" cannot be used to impute specific knowledge of wrongdoing to a majority of the director defendants in order to satisfy the demand futility test. For example, plaintiff alleged that according to the audit committee's report, the "Individual Defendants" knew that retention payments had been made and improperly accounted for. However, the report specifically

-13-

states that "senior management" knew of these problems. The managers' knowledge cannot then be imputed to the director defendants for the purpose of establishing their potential personal liability.

¶ 55                           c. Authorization of an Internal Investigation

¶ 56      Plaintiff's last *Rales* claim alleges that all of the directors are "interested" because they face a "substantial likelihood of liability in connection with the audit committee's purported 'internal investigation' and the restatement of Huron's financial results." Consequently, he alleges, the board has shown "hostility" to a derivative suit. Additionally, he asserts that the audit committee "could not possibly have performed an 'independent' investigation, because *** [its members] have been charged with investigating their own conduct."

¶ 57      Initially, we note that plaintiff has failed to identify the basis of personal liability that results from the directors' "connection with the [a]udit [c]ommittee's purported 'internal investigation' and the restatement of Huron's financial results." As such, he has failed to adequately plead how, specifically, the directors would have favored their personal interests in avoiding liability while evaluating the demand claim.

¶ 58      The remaining allegation–that the audit committee defendants cannot be disinterested when investigating their own conduct–was rejected by the Delaware Supreme Court in *Aronson* as a "bootstrap" argument. *Aronson*, 473 A.2d at 818. There, it said, "a bare claim of this sort raises no legally cognizable issue under Delaware corporate law." *Aronson*, 473 A.2d at 818. Therefore, plaintiff also has not established demand futility based on director oversight liability in this context.

¶ 59                                   2. *Aronson* Claim

¶ 60      Plaintiff also alleged that all of the directors are "interested" because they "engaged in conduct which is not protected by the business judgment rule" by retaining defendant Burge as treasurer of Huron for five months after his employment was terminated in July 2009. He alleges that Burge's salary for those months amounted to "bestowing gifts on him, which was a waste of corporate assets." He claims that this decision by the directors is not protected by the business judgment rule.

¶ 61      Plaintiff's allegations challenge a specific business decision of the directors and are analyzed under the *Aronson* standard. See *Rales*, 634 A.2d at 933. As stated above, demand is excused under the *Aronson* standard where the complaint pleads "particularized facts creating a reasonable doubt that (1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." (Internal quotation marks omitted.) *Braddock*, 906 A.2d at 784.

¶ 62      The business judgment rule cloaks directors with the presumption that in making business decisions on behalf of the corporation, they do so on an informed basis, in good faith, and in the honest belief that their actions are in the corporation's best interest. *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988) (citing *Aronson*, 473 A.2d at 812), *overruled on other grounds*, *Brehm*, 746 A.2d at 254. Where a derivative plaintiff fails to rebut this

presumption with well-pleaded facts, the plaintiff must allege some other facts to raise a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment. *Grobow*, 539 A.2d at 187. Here, as in *Grobow*, plaintiff did not allege the traditional claims of fraud, bad faith, or self-dealing in rebuttal. *Grobow*, 539 A.2d at 187. Thus, plaintiff must allege some other set of facts to refute the presumption that the directors "exercised sound business judgment in the honest belief" that retaining Burge as treasurer of Huron "was in the best interest of the company." (Internal quotation marks omitted.) *Grobow*, 539 A.2d at 187.

¶ 63     Under the first prong of *Aronson*, plaintiff must adequately plead that the directors had a personal interest in retaining Burge or that they were beholden to him in a way that showed they lacked independence. Plaintiff alleges neither that the directors received a personal financial benefit by retaining Burge as treasurer nor that they would be personally detrimentally impacted in a way not equally shared by the stockholders by not retaining him. See *Rales*, 634 A.2d at 936 (citing *Aronson*, 473 A.2d at 812). Nor does he allege that the directors were beholden to Burge in any way. Rather, plaintiff alleges that the directors "bestow[ed] gifts" upon Burge by retaining him in a paid position for an additional five months after terminating his employment, which was a waste of corporate assets.

¶ 64     In that case, plaintiff has the burden of showing through particularized pleading that an "exchange *** is so one[-]sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." (Internal quotation marks omitted.) *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 137 (Del. Ch. 2009); see also *Grobow*, 539 A.2d at 189 (citing *Saxe v. Brady*, 184 A.2d 602, 610 (Del. Ch. 1962)). Plaintiff's complaint contains no such allegations. For example, he does not allege that Burge failed to perform any duties as treasurer despite receiving a salary, nor does he allege that the salary Burge received was exorbitant for the services provided. He merely alleged that "despite concluding that it was appropriate to replace him, the Board nonetheless agreed to permit Burge to continue to serve" as treasurer and that his continued employment was a "gift." A court is particularly ill-suited for determining whether payments for services are reasonable or excessive because the value of the services is a matter of judgment on the part of the person paying for them. *Saxe*, 184 A.2d at 610. However, we can surmise that at least one reasonable benefit of retaining Burge for an additional five months would be having someone familiar with the position perform those duties until a suitable replacement was found and having him assist in the transition to a new treasurer. Therefore, plaintiff has not established a claim for corporate waste to overcome the presumption of good faith and, thus, has not established demand futility. See *Citigroup*, 964 A.2d at 137.

¶ 65     For the foregoing reasons, plaintiff has not met his burden of pleading with particularity that demand was futile. Accordingly, his complaint was properly dismissed.

¶ 66                              E. Leave to Amend the Complaint

¶ 67     Finally, plaintiff argues that the circuit court erred in denying his "requested leave to replead in the event that [it] was inclined to grant any portions" of the motion to dismiss. He argues on appeal that he "contemplated" adding certain particularized allegations had he been

-15-

allowed to amend the complaint.

¶ 68    Our review of the record reveals that plaintiff never made a proper motion to the court to amend his complaint and, thus, there was nothing for the circuit court to act on. Plaintiff cites to a footnote contained in the "Conclusion" section of his response to the motion to dismiss. The footnote states, "[i]f the court is inclined to grant any portion of Defendants' Motions, Plaintiffs respectfully request 45 days leave to replead," citing *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 748 (2009), in support. That is not a proper motion for leave to amend. We review a court's ruling on a motion for leave to amend a complaint for an abuse of discretion. *Alpha School Bus*, 391 Ill. App. 3d at 748-49. In order for the circuit court to exercise its discretion in deciding on the motion, it must review the proposed amended pleading to determine whether it would cure the defect in the pleadings, whether it was timely, whether it prejudiced the opposing party, and whether there were previous opportunities to amend. *Alpha School Bus*, 391 Ill. App. 3d at 748-49 (citing *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992)). Here, the circuit court had not yet granted defendants' motion to dismiss when plaintiff submitted its response to that motion. Thus, plaintiff's footnote in that response could not have served as a proper motion for leave to amend, which must contain an argument for permitting amendment pursuant to the above factors and include a copy of the proposed amended pleading. *Alpha School Bus*, 391 Ill. App. 3d at 749; see also 3 Richard A. Michael & Michael J. Kaufman, Illinois Practice §§ 26:1, 26:3 (2d ed. 2011) ("[a] reviewing court will not consider any alleged error in denying a motion for leave to amend unless the proposed amendment has been submitted to the trial court and made part of the record"). The circuit court did not abuse its discretion in denying plaintiff's motion because, among other things, plaintiff never made a proper motion.

¶ 69                                III. CONCLUSION

¶ 70    For all of the foregoing reasons, we hold that plaintiff failed to adequately allege particularized facts establishing that demand on the directors would have been futile under Delaware Chancery Court Rule 23.1. Additionally, plaintiff failed to make a proper motion for leave to amend. Thus, his claim that the court erroneously denied his motion fails.

¶ 71    Affirmed.