2015 IL App (1st) 142384

FIRST DIVISION
SEPTEMBER 28, 2015

No. 1-14-2384

| | | |
|---|---|---|
| *In re* THE VISITATION OF J.T.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (Jenny Phommaleuth, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | No. 14 D 079116 |
| v. | ) | |
| | ) | |
| Julia Hernandez, | ) | Honorable |
| | ) | Daniel R. Degnan, |
| Defendant-Appellee). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Liu and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from the July 1, 2014 order entered by the circuit court of Cook County, which dismissed an action seeking visitation with a minor that was filed by plaintiff Jenny Phommaleuth (Jenny) against defendant Julia Hernandez (Julia).  On appeal, Jenny argues that the trial court erred in granting Julia's motion to dismiss the action.  For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                BACKGROUND

¶ 3    From 2002 to 2006, and again from 2006 to 2009, Jenny and Julia were in a romantic relationship with each other.  In 2006, the parties broke up for a period of approximately six months, during which Julia became pregnant with the minor child in the case at bar, J.T.H.  The parties reconciled their relationship prior to J.T.H.'s birth in 2007.  Julia is the biological mother

of J.T.H. Jenny was present for J.T.H.'s birth and for surgery performed on him in 2007, helped select a name for the child, attended prenatal doctor visits with Julia, and resided with J.T.H. in the parties' shared home. According to Jenny's allegations in her complaint, Jenny paid for half of J.T.H.'s expenses, traveled with Julia and J.T.H., was present for many milestones, and the parties publicly held themselves out to be a family.

¶ 4    In 2009, the parties' romantic relationship dissolved and Jenny moved out of the shared home, while J.T.H. continued to reside in the home with Julia. Following the parties' break up in 2009, Jenny continued to visit with J.T.H., including picking him up from daycare and caring for him a few hours daily, spending every other weekend with him, and spending some holidays together. The parties also continued to participate in activities together, such as going to the beach and attending dinners and parties with family and friends.

¶ 5    In 2011, the parties agreed to not participate in so many activities together with J.T.H., but to continue the every other weekend visits between Jenny and J.T.H., as well as the daycare pickups. According to Jenny, the parties "began to create calendars to keep track of the days that each party would be caring for the minor child, which included holidays and special events." The parties also allegedly continued to equally split the costs and expenses in caring for J.T.H., including fees related to his education and summer camps. According to Jenny, for a period of seven years since his birth in 2007, J.T.H. has had a parent-child relationship with her.

¶ 6    Prior to the summer of 2013, the parties discussed guardianship or adoption of J.T.H. by Jenny, looked into the possibility of adoption, and agreed to adoption when the parties had secured sufficient funds to pay for costs associated with the adoption process. According to Jenny, the parties continued to jointly care for J.T.H. until January 2014.

¶ 7     On January 10, 2014, Julia informed Jenny that she no longer wanted Jenny to have contact with J.T.H. Jenny has not seen or spoken to J.T.H. since that date.

¶ 8     On January 30, 2014, Jenny filed an action against Julia, seeking visitation with J.T.H. In the "petition for visitation," Jenny alleged that based on her intent to adopt J.T.H. and her parent-child relationship with him, she has standing to seek visitation with the child under the equitable adoption doctrine.

¶ 9     On March 4, 2014, Julia filed a section 2-615 motion to dismiss the petition for visitation, on the basis that Jenny lacked standing to petition the court for visitation with J.T.H. On March 28, 2014, Jenny filed a response to the motion to dismiss.

¶ 10    On June 10, 2014, a hearing on Julia's motion to dismiss was held. On July 1, 2014, the circuit court issued an order dismissing Jenny's petition for visitation, finding that she lacked standing to petition for visitation with J.T.H. because the equitable adoption doctrine was inapplicable in the context of statutory child custody proceedings.

¶ 11    On July 24, 2014, Jenny filed a timely notice of appeal. Accordingly, we have jurisdiction over this appeal pursuant to Supreme Court Rules 301 and 303. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 1, 2007).

¶ 12                                    ANALYSIS

¶ 13    The sole inquiry before us on appeal is whether the circuit court erred in granting Julia's motion to dismiss Jenny's petition for visitation, which we review *de novo*. See *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 14. Generally, the question of standing is also reviewed *de novo*. *In re Guardianship of K.R.J.*, 405 Ill. App. 3d 527, 535 (2010).

¶ 14    As a preliminary matter, we note that on November 26, 2014, Julia filed before this court a motion to strike portions of Jenny's reply brief, which this court ruled would be addressed in conjunction with the disposition of this case.  In that motion, Julia specifically argued that the second paragraph of Jenny's reply brief willfully misrepresented a legal conclusion by asserting that our supreme court had "indicated that [the] equitable adoption [doctrine] should be applied to appropriate visitation cases and that the visitation cases should be considered in the equitable adoption test from *DeHart*."  While we decline to strike this portion of the reply brief, we will instead disregard any purported points of law that are inconsistent with relevant Illinois legal authority.

¶ 15    Turning to the merits of the appeal, we determine whether the circuit court erred in dismissing Jenny's petition for visitation of J.T.H., on the basis that she lacked standing because the equitable adoption doctrine was inapplicable to statutory child custody proceedings.

¶ 16    Jenny argues on appeal that she has standing to seek visitation with J.T.H. under the equitable adoption doctrine.  Relying on *DeHart v. DeHart*, 2013 IL 114137 and *In re Parentage of Scarlett Z.-D.*, 2014 IL App (2d) 120266-B, she argues that the equitable adoption doctrine applies to visitation cases, noting that she has alleged sufficient facts to show her intention to adopt J.T.H. and that she had acted consistently with that intent by forming a close and enduring familial relationship with the child.

¶ 17    Julia responds that the circuit court's dismissal of Jenny's petition for visitation was proper, arguing that Jenny does not have standing to seek visitation with J.T.H. because the equitable adoption doctrine is inapplicable to visitation proceedings.

¶ 18    A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint based on defects apparent on its face.  735 ILCS 5/2-615 (West 2012).  "In reviewing a section 2-615

dismissal motion, the relevant question is whether, taking all well-pleaded facts as true, the allegations in the complaint, construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Duffy*, 2012 IL App (1st) 113577, ¶ 14. A section 2-615 motion to dismiss is granted where "no set of facts can be proved entitling the plaintiff to recovery." *Id.* However, a plaintiff "may not rely on factual or legal conclusions that are not supported by factual allegations." *Id.* Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action asserted. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). We may affirm the circuit court's decision on any basis supported by the record. *In re Huron Consulting Group, Inc.*, 2012 IL App (1st) 103519, ¶ 33.

¶ 19   Under section 607 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/607 (West 2012)), grandparents, great-grandparents, siblings, or stepparents of a minor child have standing to seek visitation with the child by filing a petition with the circuit court. Jenny is not a grandparent, great-grandparent, sibling, or stepparent of J.T.H. Jenny also does not, and cannot, argue that she is either the child's biological mother or legally adoptive parent. Rather, she argues that she has standing to petition for visitation of J.T.H. by virtue of the equitable adoption doctrine. The equitable adoption doctrine "allows a person who was accepted and treated as a natural or adopted child, and as to whom adoption typically was promised or contemplated but never performed, to *share in the inheritance* of the foster or stepparent." (Emphasis added.) *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶ 48.

¶ 20   *DeHart* was a model case for equitable adoption. That case involved an action against the executor of an estate to contest the decedent's will. The plaintiff, James DeHart, born in 1944, was held out to be the son of the decedent, Donald DeHart, for James' entire life. Donald

married James' birth mother when James was about two years old. She and Donald agreed that he would adopt James. This agreement was kept secret for the good of the family. Donald hired an attorney, received a purported birth certificate that named him as James' father, and believed that the adoption had been formalized and was legal. Throughout their lifetimes, both Donald and James used the purported birth certificate to conduct the affairs of life. However, in 2000, during the process of applying for a passport, James, then 56 years old, obtained his true birth certificate and first learned that he was not Donald's biological son. By then, James' mother was suffering from early-onset dementia and died in 2001. Even after confronting Donald about the birth certificates and after the death of James' mother, Donald continued to hold James out as his son and executed a will leaving him an inheritance. However, the record contained no legal documentation of an adoption. *DeHart*, 2013 IL 114137, ¶¶ 3-7. In 2005, Donald remarried at the age of 83. His new wife, the defendant, was approximately 54 years old. The defendant allegedly exerted undue influence on Donald when he was not of sound mind. About one year later, Donald executed a will in which he stated that he had no children and bequeathed nothing to James. *Id.* ¶¶ 8-9. When Donald died, the defendant was the executor of his estate, and she filed the second will in the circuit court. James contested the will in a complaint alleging testator incapacity, undue influence, fraudulent inducement, intentional interference with testamentary expectancy, contract for adoption, and equitable adoption. *Id.* ¶¶ 11-12. The circuit court granted the defendant's motion to dismiss James' entire complaint for failure to state a cause of action. However, the appellate court reversed the dismissal. *Id.* ¶¶ 13-14. In affirming the judgment of the appellate court, our supreme court analyzed James' equitable adoption claim and concluded that "in Illinois an equitable adoption theory should be recognized under the right circumstances." *Id.* ¶ 58. In adopting the California Supreme Court's holding in *In re Estate of*

*Ford*, 82 P.3d 747 (Cal. 2004), the *DeHart* court held that "a plaintiff bringing an equitable adoption claim must prove an intent to adopt \*\*\* and, additionally, must show that the decedent acted consistently with that intent by forming with the plaintiff a close and enduring familial relationship." *DeHart*, 2013 IL 11437, ¶ 59.

¶ 21 Following the decision in *DeHart*, our supreme court issued two supervisory orders directing the appellate court to reconsider two prior decisions involving child custody proceedings (*In re Marriage of Mancine*, 2012 IL App (1st) 111138, and *In re Parentage of Scarlett Z.-D.*, 2012 IL App (2d) 120266), to determine if a different result was warranted in light of *DeHart*. See *Mancine v. Gansner*, No. 113978 (Ill. May 29, 2013); *In re Parentage of Scarlett Z.-D.*, No. 115000 (Ill. May 29, 2013), pet. for leave to appeal denied.

¶ 22 On March 31, 2014, after reconsidering its prior decision in *In re Marriage of Mancine* in light of *DeHart*, the First District of this court held that *DeHart* did not warrant a different result because "equitable adoption is a concept in probate to determine inheritance and should have no application in the context of statutory proceedings of adoption, divorce proceedings, or parentage." *In re Marriage of Mancine*, 2014 IL App (1st) 111138-B, ¶ 2. Specifically, the *Mancine* court found that the equitable adoption doctrine did not apply to confer standing on the husband in the divorce proceedings to seek custody of a minor child who had only been adopted by his wife during the marriage. *Id.* ¶ 14.

¶ 23 On May 22, 2014, after reconsidering its prior decision in *In re Parentage of Scarlett Z.-D.* in light of *DeHart*, the Second District of this court declined to follow the First District's March 31, 2014 holding in *In re Marriage of Mancine*, stating that "we are not prepared to hold, as a matter of law, that the equitable adoption doctrine could never be applied to a custody case." *In re Parentage of Scarlett Z.-D.*, 2014 IL App (2d) 120266-B, ¶ 64. *In re Parentage of Scarlett*

*Z.-D.* involved a former boyfriend who filed an action to establish parentage of a child who had not been legally adopted by him but who had only been adopted by his former girlfriend during the parties' romantic relationship. *Id.* ¶ 3. The Second District found that any determination regarding the applicability of the equitable adoption doctrine would be premature, "given the current state of the record, which is not developed with respect to this theory," and remanded the cause for the circuit court to make factual findings with reference to the equitable adoption doctrine recognized by *DeHart. Id.* ¶¶ 65, 67.

¶ 24   On appeal, Jenny primarily relies on the Second District's May 22, 2014 ruling in *In re Parentage of Scarlett Z.-D.*, and attempts to distinguish the First District's March 31, 2014 decision in *In re Marriage of Mancine*, in arguing that she has standing under the equitable adoption doctrine to seek visitation with J.T.H. However, we note that, since the filing of Jenny's opening and reply briefs on appeal before us, our supreme court reversed the Second District's May 22, 2014 ruling in *In re Parentage of Scarlett Z.-D.*, and definitively held that the equitable adoption doctrine, as recognized in *DeHart*, is a *probate concept* to determine inheritance and does not apply to parentage, child custody, or visitation proceedings. *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶¶ 2, 52. Therefore, pursuant to our supreme court's final holding in *In re Parentage of Scarlett Z.-D.*, we hold that Jenny lacks standing to petition for visitation of J.T.H. Accordingly, the circuit court did not err in granting Julia's motion to dismiss the petition for visitation on this basis.

¶ 25   Nonetheless, Jenny argues that the circuit court erred in dismissing her petition for visitation, claiming that she and Julia had a "long-standing parenting schedule" for J.T.H. that should be recognized and upheld by the court. Relying on *In re M.M.D.*, 213 Ill. 2d 105 (2004), she specifically argues that because Julia, as J.T.H.'s legal parent, made the decision to include

Jenny in the child's life for seven years after his birth, and made a "parenting schedule" with Jenny to care for the child after their romantic relationship dissolved in 2009, the court should uphold the parties' agreement. We reject this contention. *In re M.M.D.* concerned a father who petitioned for the modification or termination of an order granting the maternal grandparents visitation with a child, after our supreme court declared Illinois' then-current grandparent visitation statute unconstitutional in *Wickham v. Byrne*, 199 Ill. 2d 309 (2002). *In re M.M.D.*, 213 Ill. 2d 105 (2004). The order from which the father appealed incorporated a visitation agreement reached by the parties and approved by the court. *Id.* at 114. In rejecting the father's argument that the preexisting agreement approved by the circuit court was invalidated by the *Wickham* decision, our supreme court found that the order regarding grandparent visitation was not imposed against the father's wishes but was a consent decree that served as "a recordation of the parties' private agreement, not an adjudication of their rights." *Id.* Our supreme court noted that once such a consent decree has been entered by the court, it is generally binding on the parties and cannot be amended or varied without the consent of each party unless it is contrary to public policy. *Id.* We find *In re M.M.D.* to be inapposite to the instant case, where no such consent decree was ever entered by the circuit court. Therefore, Jenny cannot be granted relief on this basis.

¶ 26     Finally, Jenny argues that the circuit court erred in granting Julia's motion to dismiss, where the issue of lack of standing was erroneously raised in a motion filed under section 2-615, rather than section 2-619, of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2012)). We reject this contention.

¶ 27     First, we find that Jenny has forfeited review of this issue on appeal because she failed to raise this issue in her response to Julia's motion to dismiss before the circuit court. See *Mabry v.*

*Boler*, 2012 IL App (1st) 111464, ¶ 24 (arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal). Second, even if not forfeited, we find Jenny's argument to be without merit, where our supreme court has rejected this same argument by finding that the issue of lack of standing may be properly brought under a section 2-615 motion to dismiss. See *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶¶ 19-21 (agreeing with appellate court that the issue of lack of standing could be brought under a section 2-615 motion to dismiss because the issue pertained to the factual insufficiency on the face of the petition). Here, Jenny admits in her petition for visitation that she intended to, but never legally adopted J.T.H. Taking as true all well-pleaded facts and construing all allegations in the petition in a light most favorable to Jenny, we find that "no set of facts can be proved entitling" Jenny to seek visitation because she lacks standing as a matter of law. See 735 ILCS 5/2-615 (West 2012); *Duffy*, 2012 IL App (1st) 113577, ¶ 14. Therefore, Jenny's arguments on this basis must fail. Accordingly, the circuit court properly granted Julia's motion to dismiss Jenny's petition for visitation.

¶ 28 In so holding, we are not unsympathetic to the position of Jenny, or even that of J.T.H., having developed a loving relationship with each other that was encouraged by Julia during the first seven years of the child's life. However, we are unable to conclude that Jenny has standing to petition for visitation under the Illinois laws as they currently exist; thus, we are unable to grant her the relief that she seeks.

¶ 29 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30 Affirmed.