**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180528-U

Order filed July 9, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| DIVISION-GAYLORD, LLC, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| CREST HILL LAND DEVELOPMENT LLC, | ) | Appeal No. 3-18-0528 |
| an Illinois Limited Liability Company, PETER | ) | Circuit No. 16-CH-1428 |
| J. KONOPKA, ROGER DUBA, UNKNOWN | ) | |
| OWNERS and NON-RECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Mark Thomas Carney, |
| (Peter J. Konopka, Appellant). | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Presiding Justice Lytton and Justice Holdridge concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court erred by finding Konopka lacked standing to challenge the trial court's judgment for foreclosure and sale.

¶ 2    In this case, the trial court entered a judgment for foreclosure of property owned by Crest Hill Land Development LLC. Peter J. Konopka, a named defendant in the foreclosure action, filed a motion to vacate or stay the judgment of foreclosure and sale, as well as a motion to

dismiss or stay the sale of the property. The trial court denied Konopka's motions after agreeing with Division-Gaylord's position that Konopka lacked a sufficient personal interest to establish standing in the case.

¶ 3    On appeal, Konopka challenges the trial court's finding that he lacked standing.

¶ 4                                    I. BACKGROUND

¶ 5    In 2003, Crest Hill Land Development LLC (Crest Hill) originally took out a mortgage loan for the purchase of 168 acres of property commonly known as "Division & Gaylord, Crest Hill, IL 60535" (the property) with the First National Bank of Illinois (First National)[1]. From the beginning, Peter Konopka and Roger Duba were the sole shareholders of Crest Hill. In 2007, Crest Hill executed a promissory note on the mortgage loan, promising to repay First National according to the agreed terms. In 2008, Crest Hill and First National modified the terms of the agreement. The agreed modification altered the maturity date, as well as the applicable interest rate on the loan. In 2010, Crest Hill also secured a mortgage loan from Home State Bank. Both Konopka and Duba personally guaranteed repayment of Crest Hill's loans.

¶ 6    In 2010, Crest Hill fell behind on its loan obligations. In the same year, Konopka initiated litigation against Duba, Mike Anderson, a former court-appointed manager of Crest Hill, Crest Hill, and Division-Gaylord, LLC (Division-Gaylord) in Cook County case No. 10-CH-49052 (the Cook County case).

¶ 7    In 2011, Division-Gaylord purchased the debt owed by Crest Hill. Two years later, on June 4, 2013, Konopka filed a fourth amended complaint in the Cook County case. All of the causes of action and requests for relief set forth in the fourth amended complaint concern the purchase, development, and debt associated with the property. In 5 of the 12 counts contained in

_____

[1]The First National mortgage documents contained in the record reveal that Crest Hill took out the mortgage at issue in 2003, however, the forbearance agreement contained in the record cites the year 2000 as the year Crest Hill took out the mortgage with First National.

the fourth amended complaint, Konopka brought suit personally against Duba, Anderson, and Crest Hill.[2]

¶ 8    In 2014, Konopka, Duba, Crest Hill, and Division-Gaylord entered into a forbearance agreement.[3] At that time, Division-Gaylord agreed to forbear from exercising its rights and remedies pursuant to the mortgage and the note for a forbearance period of 18 months. As part of the forbearance agreement, Division-Gaylord acknowledged that Crest Hill had insufficient funds to make the monthly payments due on the note and agreed that no payments would become due during the forbearance period. However, 9% interest would continue to accrue on the loan balance during the forbearance period. Both Duba and Konopka signed the forbearance agreement on behalf of Crest Hill on February 25, 2014. The parties further executed a settlement and mutual release on February 25, 2014. As part of the agreement, Division-Gaylord permanently released Konopka and Duba from their obligations as personal guarantors for the applicable loans.

¶ 9                                    A. Foreclosure Complaint

¶ 10    In the instant case, on August 15, 2016, Division-Gaylord filed a complaint to foreclose on the foreclosure mortgage (foreclosure complaint) against Crest Hill. Count I of Division-Gaylord's foreclosure complaint named Crest Hill, Konopka, Duba, unknown owners, and nonrecord claimants as defendants. Count I sought to terminate Crest Hill's ownership interest in the subject property, as well as any interests held by Konopka and/or Duba. Count II of the foreclosure complaint alleged Konopka executed a personal guarantee on the payment of the

---

[2]The remaining seven counts of the fourth amended complaint were brought by Konopka, derivatively on behalf of Crest Hill against Duba and Division-Gaylord. Konopka requested money damages on behalf of Crest Hill, including punitive damages and injunctive relief.

[3]The 2014 forbearance agreement reveals that the parties executed a deed to satisfy Crest Hill's obligations under the Home State Bank loan. However, the forbearance agreement mainly addresses Crest Hill's obligations under the First National loan and Division-Gaylord's agreement to refrain from foreclosing on the property.

note. Accordingly, Division-Gaylord sought a deficiency judgment against Konopka, personally, *inter alia*.[4] The forbearance agreement, dated February 25, 2014, was attached to Division-Gaylord's foreclosure complaint.

¶ 11     On March 5, 2018, Crest Hill's appointed attorney, Steven Fuoco,[5] answered Division-Gaylord's foreclosure complaint on behalf of Crest Hill.[6] On February 20, 2018, Division-Gaylord filed a motion for summary judgment solely against Crest Hill, alleging the 18-month forbearance period had passed since the effective date of the 2014 forbearance agreement without Crest Hill making payment of "the amount due and owing." Division-Gaylord asserted that Crest Hill was now indebted to Division-Gaylord in the amount of $4,993,673.32 and requested a judgment of foreclosure and sale of the property securing the note.

¶ 12     On April 20, 2018, Crest Hill filed a response to Division-Gaylord's motion for summary judgment. Crest Hill asserted that the unpaid principle Division-Gaylord demanded was $85,172.50 above the outstanding balance due on the note. To resolve this issue, at some undefined point in time, Division-Gaylord agreed to reduce Crest Hill's unpaid balance on the note by the amount of $85,172.50.

¶ 13     On May 3, 2018, the trial court conducted a hearing on Division-Gaylord's motion for summary judgment in the foreclosure proceeding. At the hearing, Fuoco stated "I can't object to the right to foreclosure sale and relief. I raised the one defense that my client has and it's been incorporated." Additionally, counsel for Division-Gaylord, Mr. Hoster, stated "the guarantors have been released, so there is no personal guarantee."

---

[4]Counsel for Division-Gaylord later conceded that Konopka had been relieved of his duties as a guarantor.

[5]The record reveals that Steven Fuoco was appointed by the Cook County circuit court in the Cook County case to represent Crest Hill in the instant Will County proceeding.

[6]The record does not contain an order from the Cook County circuit court appointing Fuoco to represent Crest Hill for purposes of the foreclosure proceedings at issue in Will County.

¶ 14　　　　On May 3, 2018, the trial court entered a judgment for foreclosure and sale in favor of Division-Gaylord. The trial court calculated a valid subsisting lien on the property in the amount of $5,021,110.48. The trial court's order stated that "[Division-Gaylord] shall be entitled to a judgment in personam for the amount of such deficiency against NO ONE." At the time of summary judgment in favor of Division-Gaylord, paragraph m. set forth in count I of the foreclosure complaint was allegedly undisputed and provided that Konopka was a person who could be "personally liable for deficiency." For purposes of this appeal, all parties agree that Konopka was not served with a summons and did not enter an appearance personally or by counsel before the judgment for foreclosure was entered against Crest Hill.

¶ 15　　　　B. Konopka's Motion to Vacate or Stay and Motion to Dismiss or Stay

¶ 16　　　　On June 25, 2018, Konopka filed a motion to vacate judgment of foreclosure and sale and to strike or stay the sale date (motion to vacate or stay), requesting the trial court to vacate the 2018 judgment for foreclosure against Crest Hill and to either stay or strike the sale date. On the same date, Konopka filed a section 2-619(a)(3) motion to dismiss or stay (motion to dismiss or stay), seeking a stay of the sale or a dismissal of the foreclosure proceeding. 735 ILCS 5/2-619(a)(3) (West 2018).

¶ 17　　　　Konopka's motion to vacate or stay and motion to dismiss or stay alleged that the note and mortgage, and questions pertaining to their terms, such as the applicable interest rate for time periods before, during, and after the term of the forbearance agreement, and enforceability, were integrally involved in pending chancery litigation between Konopka, Duba, Crest Hill, and Division-Gaylord in the Cook County case. Konopka argued that because the enforceability and terms of the note and mortgage were at issue in the Cook County case, the foreclosure action should be stayed and could not be sustained in Will County until the resolution of the Cook

5

County matter. If the court in Cook County agreed with Konopka's position that the appropriate interest rate was less than 18%, Konopka argued in his motion to dismiss or stay and motion to vacate or stay that the note would have been paid in full.

¶ 18     In support of his argument, Konopka attached his fourth amended complaint filed on June 4, 2013, in the Cook County case. Konopka's fourth amended complaint consists of 12 counts. Konopka's derivative claims on behalf of Crest Hill alleged Duba committed breach of fiduciary duty, breach of contract, constructive fraud, fraudulent inducement, and conversion, and that Division-Gaylord aided and abetted Duba's breach of fiduciary duty.[7] Specifically, in count XI, Konopka challenged Division-Gaylord's ability to apply a default interest rate of 18% to the outstanding balance on the loan and argued that a reduced rate of 5%, which should have been applied, would have eliminated excess interest.

¶ 19     With regard to the counts stating Konopka's personal claims in the Cook County case, count VII of the fourth amended complaint alleges that "[b]ecause of Duba's breaches of fiduciary duty *** Crest Hill has been left with virtually no funds to continue its operations, which consist of developing [the property] for eventual sale." Konopka alleges that he took out a *personal* loan in the amount of $200,000, which was used in the ordinary course of Crest Hill's business to enable a "build out" and the continuation of Crest Hill's otherwise doomed operations. Count VII alleged that the loan secured by Konopka enabled Crest Hill to collect increased rental income, ultimately increasing the value of the land in the event of a sale by Crest Hill. Konopka requested a declaratory judgment from the court in the Cook County case,

---

[7]Count XI of the fourth amended complaint in the Cook County case, which Konopka uses as a cornerstone in his motion to dismiss or stay in the instant case, alleges Division-Gaylord aided and abetted Duba to breach his fiduciary duty to Crest Hill. Count XI alleges Duba's son, Douglas, served as trustee of the Red Trust, Division-Gaylord's only member, but, in truth, Duba controlled Division-Gaylord and personally initiated the foreclosure action against Crest Hill.

declaring Konopka's personal loan was a valid corporate debt and requested reimbursement from Crest Hill pursuant to 805 ILCS 180/15-7.

¶ 20    Konopka's motion to vacate or stay and motion to dismiss or stay in the foreclosure case also included an attached memorandum opinion and order from the trial court in the Cook County case dated July 29, 2014. The trial court's memorandum and opinion ruled on the counts Konopka brought both personally and derivatively on behalf of Crest Hill against Duba without addressing other counts. The memorandum and opinion documents that the majority of Konopka's derivative and personal claims against Duba survived Duba's motion to dismiss. The current status of the surviving counts in the fourth amended complaint in the Cook County case is not revealed in this record.

¶ 21    C. Hearing on Konopka's Motion to Vacate or Stay and Motion to Dismiss or Stay

¶ 22    On July 2, 2018, the trial court conducted a hearing on Konopka's motion to vacate or stay and motion to dismiss or stay. At the hearing, Mr. Hoster represented Division-Gaylord, Mr. Fuoco represented Crest Hill, and Mr. Moynihan represented Duba. Both attorneys for Division-Gaylord and Duba argued Konopka's motion to vacate or stay and motion to dismiss or stay should be denied on the grounds that Konopka lacked personal standing to challenge the foreclosure judgment against Crest Hill. Mr. Hoster advised the court:

> "Judge, Division-Gaylord is a limited liability company that bought loans. It doesn't really matter who they bought them from, but Konopka and Duba are the two members and I believe they are co-managers in the debtor, which is [Crest Hill]. Crest Hill has title to the property. They are represented, very ably in my view, by Mr. Fuoco. So you have the two members of the LLC and the attorney for the LLC.

7

There is litigation involving the two members of the LLC at the Daley Center going back to 2010, and the two of them have been suing each other. My contention is that that has nothing to do with what we're doing here. We're doing a straight foreclosure. So I filed suit against Crest Hill. They are the debtor on the loan and the mortgage and they own the real estate. When I filed the suit, I also named [Duba], represented by Mr. Moynihan, and [Konopka] represented by Counsel because they signed personal guarantees.

After I filed the suit, Mr. Moynihan called me and said, Scott, are you aware that as part of the [Cook County case], Division-Gaylord, my client, who is represented by different counsel in Chicago at the Daley Center, agreed to release Duba and Konopka from their personal guarantees. And I said oh, I did not know that. Thank you, Mr. Moynihan. And he sent me the document releasing. So I never made an attempt to serve [Konopka] then when I saw that he was released, and I'm not pursuing [Duba]. I can't pursue them. Division-Gaylord released them [in the Cook County case] on the personal guarantees.

So all I've done is go ahead and foreclose on the property against [Crest Hill]. Now, I am willing today, perhaps I should have done it as we moved ahead, I'll dismiss [Konopka]. I mean, there is no reason to have him in the case. We didn't seek to serve him, we didn't seek any relief against him. If Counsel wants a dismissal order today against his client, I will give it to him. We didn't pursue him. We did pursue [Crest Hill] on the foreclosure.

\* \* \*

8

As I said, I will dismiss [Konopka] right now. We are not seeking any relief. We didn't seek to serve him. He is not in the lawsuit. His rights — the only thing we were looking for was the personal guarantee, and I can't pursue that, so there is no reason for the motion to be filed. I'm happy to dismiss him and I think that should settle it, your Honor."

¶ 23 In response, counsel for Konopka, Mr. Heilizer, argued Konopka's dismissal as a named party in the foreclosure proceeding on the date of the motion hearing was improper. Konopka's attorney argued his client had a valid personal interest in the deficiency amount and argued the foreclosure and sale of the property was improper because the Cook County case remained pending. Counsel for Konopka argued that if certain allegations in the Cook County case were proven, either the loan balance on the property would be zero, or the loan balance would be far less than the current outstanding balance the court adopted for purposes of the deficiency judgment.

¶ 24 Following extended argument, the trial court expressly found, consistent with the arguments of counsel for Division-Gaylord and Duba, that Konopka lacked standing to bring the motion to vacate or stay and the motion to dismiss or stay because the judgment for foreclosure and sale was entered against Crest Hill solely, with no opposition from Crest Hill. The trial court also granted Division-Gaylord's oral motion to voluntarily dismiss Konopka as a party on that date.

¶ 25 On July 5, 2018, Division-Gaylord acquired the property for $1,000,000 following a sheriff's sale. On August 1, 2018, the trial court confirmed the sale and entered a deficiency judgment against Crest Hill in the amount of $4,103,603.61. Konopka appeals.

¶ 26                                    II. ANALYSIS

¶ 27        On appeal, Konopka contends the trial court erred when the court found he lacked standing to challenge or stay the foreclosure process and impending sale of the property by bringing the motion to vacate or stay and the motion to dismiss or stay. Division-Gaylord argues the trial court properly dismissed Konopka's motion to vacate or stay and motion to dismiss or stay because Konopka lacked standing to bring the motions. We recognize the convoluted procedural posture of this case has made the appropriate standard of review less than obvious. For this reason, during oral arguments we requested the parties to submit supplemental briefs regarding the proper standard of review.

¶ 28                                 A. Standard of Review

¶ 29        Konopka argues standing involves a question of law necessitating *de novo* review. Division-Gaylord contends that abuse of discretion is the applicable standard of review. Division-Gaylord advocates for this standard of review by arguing that, in essence, Konopka brought, and the trial court denied, Konopka's motion or petition to intervene.[8]

¶ 30        At the outset, we note that Konopka's pending motions were not captioned as motions or petitions to intervene. Significantly, the parties did not discuss the issue of intervention with the court during the hearing on Konopka's pending motions. Moreover, Konopka's motions clearly failed to meet the statutory requirements for intervention set forth under section 2-408 of the Code of Civil Procedure, and rightfully so. 735 ILCS 5/2-408 *et seq*. (West 2018). Intervention

_____

[8]Section 15-1501(d) of the Code of Civil Procedure, pertaining to intervention, provides that "[a]ny person who has or *claims* an interest in real estate which is the subject of a foreclosure or an interest in any debt secured by the mortgage shall have an unconditional right to appear and become a party in such foreclosure." 735 ILCS 5/15-1501(d) (West 2018). (Emphasis added.) Though section 15-1501(d) concerns party intervention, which did not occur here, section 15-1501(d) does illustrate that those *claiming* an interest in real estate, such as Konopka does here, may be permitted to intervene and become parties in foreclosure actions. (Emphasis added.)

was simply not an issue at the time Konopka filed the motion to vacate and the motion to dismiss because both Konopka and Duba remained named defendants in the foreclosure proceeding on the date of the hearing before the trial court. In fact, Mr. Moynihan made arguments on behalf of his client, Duba, who, like Konopka, remained a named defendant in the foreclosure proceeding. Interestingly, Duba's counsel participated in the motion hearing without objection from Division-Gaylord concerning Duba's lack of personal standing.

¶ 31    Based on this record, there would have been no need for either Duba or Konopka to file a petition to intervene because Division-Gaylord named both shareholders as defendants in the foreclosure action. Therefore, we conclude Konopka was not attempting to intervene in this case for purposes of ascertaining the proper standard of review for this appeal.

¶ 32    Ultimately, we are tasked with reviewing the trial court's decision disposing of Konopka's motion to vacate or stay and motion to dismiss or stay. In many cases, appellate review of a trial court's ruling on a motion to vacate or dismiss involves an abuse of discretion standard. However, based in large part on the arguments of counsel for Division-Gaylord and Duba, the trial court's ruling did *not* reach the merits of the underlying motions based on an exercise of the court's discretion. Instead, the trial court expressly found that Konopka lacked standing to address the court at all for the purposes of vacating, staying, or dismissing the foreclosure action. Whether defendant had standing is a question of law subject to *de novo* review. *In re County Treasurer*, 2013 IL App (3d) 120999, ¶ 16; *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35. Therefore, we conclude that the *de novo* standard of review applies in this appeal.

11

¶ 33          B. Konopka's Derivative Interests in the Foreclosure on Behalf of Crest Hill

¶ 34          To further frame this issue for purposes of appeal, we note that Konopka repeatedly argues in his brief that the interests at stake with regard to the issue of standing are derivative interests. We disagree with Konopka's assertions. The record reveals that Konopka's motion to vacate or stay and motion to dismiss or stay were brought individually by Konopka, not derivatively on behalf of Crest Hill in the instant proceeding. We thus refrain from construing Konopka's derivative interests as they pertain to standing in this appeal and instead turn to Konopka's secondary argument.

¶ 35          C. Konopka's Personal Interests in the Foreclosure

¶ 36          Alternatively, Konopka clearly asserts in his brief that he possesses a personal interest in the outcome of the foreclosure, stemming from the financial losses Konopka would suffer personally if the judgment for foreclosure and the deficiency judgment were not vacated by the trial court. Accordingly, our analysis will center upon whether Konopka possesses a sufficient personal interest in the outcome of this foreclosure case, such that Konopka has standing as a matter of law, to participate in the foreclosure proceeding.

¶ 37          Division-Gaylord is correct that Konopka is not a necessary party to the mortgage foreclosure. With specific regard to foreclosure actions, section 15-1501(a) of the Code of Civil Procedure, labeled "Necessary Parties," provides:

>"only (i) the mortgagor and (ii) other persons (but not guarantors) who owe payment of indebtedness or the performance of other obligations secured by the mortgage and against whom personal liability is asserted shall be necessary parties defendant in a foreclosure. The court may proceed to adjudicate their respective interests, but any disposition of the mortgaged real estate shall be subject to (i) the interests of all other

12

persons not made a party or (ii) interests in the mortgaged real estate not otherwise barred or terminated in the foreclosure." 735 ILCS 5/15-1501(a) (West 2018).

¶ 38   However, litigants need not be necessary parties to have standing to bring matters to the attention of the trial court. Even nonparties have been recognized to have standing where "they have 'a direct, immediate and substantial interest in the subject matter of the litigation which would be prejudiced by the judgment.' " *In re C.H.*, 2018 IL App (3d) 180089, ¶ 12 (citation omitted). To further expand this notion, shareholders may bring direct actions, not in a derivative capacity, where they have a "direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Alpha School Bus Co., Inc. v. Wagner*, 391 Ill. App. 3d 722, 746 (2009).

¶ 39   Aside from the fact that Konopka began as a named party in the foreclosure complaint and remained a named party throughout the foreclosure proceedings, Konopka, in his personal capacity, stands to sustain a direct financial injury if the judgment of foreclosure is not vacated. To illustrate this point, we turn to Konopka's fourth amended complaint in the Cook County case.

¶ 40   Count VII of the fourth amended complaint in the Cook County case is of particular importance here. In count VII, Konopka alleges that he took out a *personal* loan in the amount of $200,000, which was used in the ordinary course of Crest Hill's business to enable a "build out" and a continuation of Crest Hill's otherwise doomed operations. Count VII alleged that Konopka's loan enabled Crest Hill to collect increased rental income, ultimately increasing the potential value of the land in the event of a future sale. Accordingly, Konopka requested the Cook County circuit court to declare the personal loan a valid corporate debt and requested $200,000 for full reimbursement of the loan.

¶ 41 Obviously, foreclosure of the property and the deficiency amount attached thereto serves to extinguish any interest Konopka has in the property and significantly diminishes the availability of Crest Hill's assets for the purpose of reimbursing Konopka for the alleged $200,000 personal loan should Konopka obtain a favorable ruling in Cook County. Furthermore, Konopka's fourth amended complaint alleges both Duba and Division-Gaylord's actions caused the interest rate on Crest Hill's commercial mortgage to be 18%, rather than a more reasonable 5%, directly impacting the amount of the deficiency judgment.

¶ 42 Due to this alleged corporate debt to Konopka and related issues pertaining to the mortgage interest rate during various time periods, which are pending the outcome of the Cook County litigation, we conclude Konopka has a personal interest in the foreclosure proceedings. For these reasons, we hold Konopka has shown an injury to a legally cognizable interest and has standing, as a matter of law, to bring the motion to vacate or stay and the motion to dismiss or stay in his individual capacity.

¶ 43 We further note that the parties' arguments concerning the trial court's grant of Division-Gaylord's oral motion to dismiss Konopka as a party defendant are now moot. The trial court appears to have granted this oral motion based on a lack of standing, which we have held was erroneous as a matter of law. Moreover, Division-Gaylord failed to adhere to the requirements set forth in section 2-1009(c) of the Code of Civil Procedure with regard to voluntary dismissals. 735 ILCS 5/2-1009(c) (West 2018).

¶ 44 For these reasons, the trial court erred by ruling that Konopka lacked standing to challenge the judgment for foreclosure and sale by filing the motion to vacate or stay and the motion to dismiss or stay. Since the trial court did not consider the merits of Konopka's motions, it would be improper for this court to do so. Accordingly, we remand the case with directions to

14

allow for a hearing on the merits of Konopka's unresolved motion to vacate or stay and motion to dismiss or stay without undue delay.

¶ 45                                   III. CONCLUSION

¶ 46          The judgment of the circuit court of Will County is reversed.

¶ 47          Reversed and remanded with directions.